**Alex E. ZARYCKI, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 92–976.

United States Court of Veterans Appeals.

Argued Nov. 19, 1993.

Decided Dec. 20, 1993.

As Amended Jan. 4, 1994.

A. Thomas Morris, Washington, DC, for appellant.

Vito A. Clementi, with whom Mary Lou Keener, General Counsel, Norman G. Cooper, Asst. General Counsel, and Thomas A. McLaughlin, Deputy Asst. General Counsel, Washington, DC, were on the pleadings, for appellee.

Before NEBEKER, Chief Judge, and FARLEY and MANKIN, Judges.

FARLEY, Judge:

This is an appeal from an April 21, 1992, decision of the Board of Veterans' Appeals (BVA or Board) which denied entitlement to service connection for post-traumatic stress disorder (PTSD). A timely appeal to this Court followed. The Court has jurisdiction pursuant to 38 U.S.C.A. § 7252(a) (West 1991). On March 31, 1993, appellant, through counsel, filed a brief. On June 1, 1993, the Secretary filed a motion for summary affirmance, for acceptance of the motion in lieu of a brief, and for a stay of proceedings pending a ruling on this motion. On July 8, 1993, appellant filed a reply brief. For the reasons discussed below, the Court will vacate the BVA decision and remand the matter for readjudication consistent with this opinion.

## I. FACTUAL BACKGROUND

Appellant served on active duty in the United States Army from September 1967 to June 1970. R. at 11. From February 1968 to February 1969, he was a member of Headquarters Battery, 7th Battalion, 15th Artillery Brigade, stationed in the Republic of Vietnam. R. at 27. From April to September 1969, appellant was assigned to Fort Hood, Texas. *Id.* From September 1969 to June 1970, appellant was reassigned to the Vietnam theater as a member of Headquarters and Headquarters Company, Second Battalion, 22nd Infantry Brigade, 25th Infantry Division. *Id.* Appellant's military occupational specialties are listed as field wireman and switchboard operator. *Id.* Appellant received the National Defense Service Medal, the Vietnam Service Medal, the Army Commendation Medal, and the Vietnam Campaign Medal. R. at 11. Both his enlistment and separation examinations were negative for any psychiatric disorders. R. at 12–15, 21–24.

In April 1983, appellant filed with a VA Regional Office (RO) an application for compensation for PTSD. R. at 30–33. On the application form, appellant noted that he had experienced flashbacks about Vietnam and dreams of dead bodies. R. at 31. In support of his application, he submitted a summary of his hospitalization at a VA medical facility from April 15–21, 1983. According to the summary, appellant was admitted because of fear of losing control, depression and poor impulse control resulting from the stress accompanying his impending divorce. R. at 34. It was noted that appellant had a history of alcohol and drug abuse, financial difficulties, difficulty in finding employment, and domestic violence. *Id.* Although appellant had reported experiencing flashbacks and nightmares, none were reported during the period of hospitalization. *Id.* It was also noted that appellant had a criminal history including stealing, breaking and entering, robbery, and shoplifting. *Id.* The treating physician commented that appellant was

cooperative, somewhat anxious, trying to impress [him] of the severity of his Vietnam experiences and how dangerous he could be, showing poor impulse control, with a lot of underlying hostility, a basically angry person, who felt that the government owed him something and that he is basically different from the rest of the patients.

*Id.*

In July 1983, appellant filed with the RO a second application for compensation for

PTSD; in describing the nature and history of his disability, he reported that he was experiencing flashbacks, nightmares, detachment, anger, and memory impairment. R. at 37–39. In September 1983, the RO sent to appellant a letter requesting that he provide detailed information regarding specific incidents in service which he believed were related to his current psychiatric disorder. Supplemental R. at 1–2. That same month, appellant underwent a VA special neuropsychiatric examination. R. at 40–41. In relating appellant's military and medical history, the examining neuropsychiatrist, Dr. S. Loeb, noted in pertinent part:

> The veteran was in the Army from September of 1967 to June of 1970. He was in Vietnam for 2 years, in Cambodia, with the 25th Infantry, in 1970 and later with the 2d Battalion, 22nd Infantry, Mechanized. He worked S–5 Intelligence and Reconnaissance. In 1968 he was in a three-quarter track vehicle and ended up in a rice paddy. He was unconscious for minutes. He doesn't know of having a skull fracture, had a laceration, did not receive a Purple Heart, but did get medals. He had the Bronze Star for performing above and beyond the call of duty, in a firefight. He has nightmares twice daily, wakes up in cold sweats. His wife, he dreams, is in a hooch and there are 2 squads of MVA [sic] coming toward him and he has no ammunition in his weapon. He sees friends that were killed. A friend named Keith got killed. An RPG put a hole in his head. He has flashbacks every day. One was triggered off by holes that he saw in the aluminum siding, reminding him of wounds and the firefights connected with them. He was placed in a rice paddy. He feels guilty about surviving, feels guilty about killing innocent people, but he isn't sure that he did, because he couldn't actually see who was killed.

R. at 40. Dr. Loeb rendered a diagnosis of "[PTSD], in a person with substance use, alcohol and mixed drugs and history of emotional instability, with considerable anxiety and depression." R. at 41.

In a rating decision dated October 1988, the RO denied service connection for, inter alia, PTSD. R. at 46. The RO noted: "Post[-]traumatic stress disorder has been diagnosed on VA examination, but the diagnosis is not supported by any confirmed stressors or Vietnam experiences, by the evidence of record." R. at 48. Thereafter, in support of his claim, appellant submitted copies of his criminal records. R. at 49–55. In December 1988, the RO again denied service connection for PTSD, finding that "[n]o new factual basis has been presented that warrants service connection for post[-]traumatic stress disorder or other condition, as criminal behavior and difficulties with the justice system resulting from criminal behavior does not constitute an adequate stressor for the grant of service connection for ... PTSD." R. at 56.

On November 8, 1989, the RO received appellant's Notice of Disagreement with the denial of his claim for service connection for PTSD. R. at 63. In January 1990, the RO provided appellant with a Statement of the Case (R. at 64–68), and he perfected an appeal to the BVA shortly thereafter. R. at 69. In October 1990, appellant's service representative presented oral arguments for subsequent presentation to and review by the BVA. R. at 72. In a decision dated December 11, 1990, the BVA remanded appellant's claim to the RO for further evidentiary development and readjudication. R. at 74–76. Prior to readjudication, the Board specifically directed that

1. The veteran should be asked to submit a detailed statement regarding the traumatic events that he claims to have experienced in Vietnam, including names of others involved, units, dates, etc. He should also be asked to submit the citation for his claimed Bronze Star Medal since that award is not shown in his service personnel records. If adequate information is received, it should be forwarded to the U.S. Army and Joint Services Environmental Support Group in Washington, D.C. for verification.

2. The veteran should be given a comprehensive examination by a board of two psychiatrists to determine the nature and extent of any psychiatric disabilities which he may have. Psychological studies with

post-traumatic stress disorder subscales should be performed. All complaints and objective findings should be reported in detail. The <u>claims folder</u> should be made available to the examiners for their review prior to the examination. It is essential that the claims folder be reviewed before a final diagnosis is made, with attention to the police record submitted by appellant. . . .

R. at 76 (underscoring in original).

In January 1991, the RO sent to appellant a letter requesting the additional information regarding his in-service stressors and his Bronze Star Medal, as directed by the BVA in its December 1990 decision. Supplemental R. at 3. In February 1991, appellant underwent another VA special neuropsychiatric examination; that examination was conducted by one psychiatrist rather than by a board of two psychiatrists as had been directed by the BVA in its December 1990 decision. R. at 78. The examining psychiatrist, Dr. G.A. Batizy, noted that appellant

was not hallucinatory or delusional, but he showed elevated expansive mood with definite lability, also he had over talkativeness, destructibility and flight of ideas. He was also overtly anxious when he was talking about his Vietnam experiences. Intellectually he was functioning fairly well. His memory was intact to remote and recent events. Due to his disorganized thinking both his insight and judgment were definitely distorted.

R. at 79. Dr. Batizy diagnosed appellant with bipolar disorder, mixed moderate; PTSD; alcohol abuse; and cannabis abuse. R. at 79. Approximately one week later, appellant underwent a battery of psychological tests. R. at 81. The administering psychologist, Dr. William F. Flynn, reported:

Reality contact has weak spots, with some perceptions blocked, at least initially, some distorted, and some peculiar ideation present. Lying just beneath the surface is a great store of combat/mayhem themes. When stimuli in the environment touch on this, veteran could lose his judgment, impulse control, and even orientation, with resultant violence. He therefore keeps interaction to a minimum. Reinforcing the trend toward isolation is paranoid component, involving the belief that et al., former co-workers were against him because of his Viet Nam history, as well as jealousy on their part. He is also subject to auditory hallucinations in which drill instructors tell him he loves no one, and should kill. He seeks refuge from his conflicts in excessive fantasy, which only strengthens people's perception of him as "weird." Obsessive rumination and a high level of tension make normal functioning difficult if not impossible. He is currently depressed in the mild range, and suicidal ideas are entertained at times, but the act is presently forestalled by concern for his son.

R. at 81. Dr. Flynn concluded that appellant's test record was "consistent with a picture of PTSD superimposed on Bipolar Disorder Not Otherwise Specified." *Id.*

Thereafter, appellant submitted a detailed statement recounting his experiences in Vietnam and Cambodia. R. at 84–93, 101–04. He reported that approximately two weeks after arriving in Vietnam in 1968, he saw a pile of dead enemy soldiers, which made him unable to eat for four days. He described a "wave" infantry attack at his landing zone (LZ) Crystal. He claimed that, during his first tour of duty in Vietnam, a fellow serviceman, Private First Class (PFC) Wake, committed suicide behind the motor pool at LZ Uplift. He alleged that his unit was ambushed by sniper fire between LZ Pony and LZ Uplift, and that the bullets came between himself and a friend. He claimed that during his second tour of duty in Vietnam, he worked in communications for S–5 Intelligence. He alleged that he was involved in reconnaissance missions into Cambodia and that, during one such mission, the vehicle upon which he was riding was ambushed resulting in several casualties and injuries. He stated that in June 1970, a fellow soldier, identified only as "Keith," wrote to his son in West Virginia telling him that he would be returning home in 30 days and would take him fishing and then was killed shortly after writing the letter. He claimed that an unidentified fellow soldier received stomach wounds from flying shrapnel, while another "had his ear drums blown

out." He also described how a medic in his unit was injured in the crotch by flying shrapnel. He reported that a personal friend of his, Sergeant Webb, was "blown to pieces," killed by a booby trap. He recalled that his battalion lost nine men in a firefight 45 days prior to his departure from Vietnam. He remembered listening on the radio to air strikes against American troops. He stated that the only serviceman with whom he kept in contact with after his discharge, Don Stryker, died from "cancer amput[ation] of [his] right leg." Further, he stated that although he previously had alleged that he had received a Bronze Star, he had been confused and had actually received an Army Commendation Medal. In the final sentence of his statement, appellant wrote: "If you need more information please let me know." R. at 103.

In April 1991, the RO sent a letter detailing appellant's claimed stressors to the United States Army and Joint Services Environmental Support Group (ESG) in order to attempt to verify the alleged stressors. R. at 93. A report of the ESG, dated May 1991, stated: on March 4, 1968, LZ Crystal received heavy mortar and recoilless rifle fire resulting in light damage; elements of the 2d Battalion, 22nd Infantry, participated in combat operations in Cambodia during May and June 1970; PFC Russell D. Wake died from a self-inflicted gunshot wound at LZ Uplift on July 7, 1969; and Specialist Fourth Class (SP4) Donald R. Webb was killed in action on March 9, 1970. R. at 94. The ESG was unable to document an enemy ground attack at LZ Crystal during the period February 1 through April 30, 1968. The ESG also could not confirm how SP4 Webb was killed. The ESG stated that in order to be able to research the other stressors that appellant mentioned, more specific information was required from him. R. at 94. The record on appeal, however, does not indicate that the RO ever requested from appellant that supplemental information.

In a rating decision dated July 1991, the RO again denied service connection for PTSD. R. at 105. After recounting appellant's claimed stressors, the various diagnoses of PTSD, and the findings of the ESG, the RO determined that appellant's records did not contain evidence of verified stressor events. R. at 107. The RO noted that appellant's Army Commendation Medal was awarded for meritorious achievement rather than for valor in combat. R. at 105–07. The RO also noted that although the ESG had verified the suicide of PFC Wake and the death of SP4 Webb, these incidents were not sufficient stressors to warrant a finding of PTSD. *Id.* With respect to those instances where appellant indicated that he had witnessed other soldiers near him being killed in combat, the RO concluded that he had not provided sufficient information to allow verification by the ESG. *Id.* The RO provided appellant with a Supplemental Statement of Case in August 1991. R. at 108–113. In its decision dated April 21, 1992, the BVA denied appellant's claim for entitlement to service connection for PTSD. *Alex E. Zarycki,* BVA 92–10505, at 5. A timely appeal to this Court followed.

## II. LAW

### A. Duty to Assist/Reasons or Bases Requirements

Section 5107(a) of title 38 of the United States Code provides that "a person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." 38 U.S.C.A. § 5107(a) (West 1991). In *Murphy v. Derwinski,* 1 Vet.App. 78, 81 (1990), this Court defined a well-grounded claim as "a plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of [§ 5107(a)]." If the claimant satisfies the initial burden of setting forth a well-grounded claim, the VA is statutorily required to assist the claimant in developing the facts pertinent to that claim. *See* 38 U.S.C.A. § 5107(a); *see also Sokowski v. Derwinski,* 2 Vet.App. 75, 77 (1991); *Moore v. Derwinski,* 1 Vet.App. 401, 405 (1991); *Murphy,* 1 Vet. App. at 81–82.

The BVA is required to base its decisions on all evidence and material of record, 38

U.S.C.A. § 7104(a) (West 1991); 38 C.F.R. § 3.303(a) (1993), and to provide an adequate statement of its reasons or bases for its findings and conclusions on all material issues of fact or law, 38 U.S.C.A. § 7104(d)(1). *See Gilbert v. Derwinski,* 1 Vet.App. 49, 56–57 (1990). "A bare conclusory statement, without both supporting analysis and explanation, is neither helpful to the veteran, nor 'clear enough to permit effective judicial review,' nor in compliance with statutory requirements." *Gilbert,* 1 Vet.App. at 57 (quoting *International Longshoremen's Ass'n v. National Mediation Board,* 870 F.2d 733, 735 (D.C.Cir.1989)).

### B. Establishing Occurrence of Stressors in Service

■ In adjudicating a claim for service connection for PTSD, the RO is required to evaluate the supporting evidence in light of the places, types, and circumstances of service, as evidenced by service records, the official history of each organization in which the veteran served, the veteran's military records, and all pertinent medical and lay evidence. 38 U.S.C.A. § 1154(b) (West 1991); 38 C.F.R. §§ 3.303(a), 3.304 (1993); *see Hayes v. Brown,* 5 Vet.App. 60, 66 (1993). With respect to injuries or disabilities incurred in or aggravated during combat, including psychiatric disabilities, even in the absence of official records to corroborate that a claimed injury or disease was incurred in or aggravated during such combat, the Secretary is required to accept as sufficient proof of service connection satisfactory lay or other evidence, provided, however, that the evidence is consistent with the circumstances, conditions, or hardships of such service. 38 U.S.C.A. § 1154(b); 38 C.F.R. § 3.304(d); *see also Hayes, supra.* On May 19, 1993, a new paragraph (f) was added to 38 C.F.R. § 3.304 which deals with the adjudication of PTSD claims and provides, in pertinent part, as follows:

(f) *Post-traumatic stress disorder.* Service connection for post-traumatic stress disorder requires medical evidence establishing a clear diagnosis of the condition, credible supporting evidence that the claimed inservice stressor actually occurred, and a link, established by medical evidence, between current symptomatology and the claimed inservice stressor. If the claimed stressor is related to combat, service department evidence that the veteran engaged in combat or that the veteran was awarded the Purple Heart, Combat Infantryman Badge, or similar combat citation will be accepted, in the absence of evidence to the contrary, as conclusive evidence of the claimed inservice stressor.

38 C.F.R. § 3.304(f) (1993).

In addition, VA's MANUAL M21–1 contains specific procedures for the VA to follow in evaluating claims for service connection based on PTSD. Recent revisions to the Manual now provide in pertinent part:

e. *Reasonably Supportive Evidence of Stressors in Service.* Any evidence available from the service department indicating that the veteran served in the area in which the stressful event is alleged to have occurred and any evidence supporting the description of the event are to made part of the record. If the claimed stressor is related to combat, in the absence of information to the contrary, receipt of the Purple Heart, Combat Infantryman Badge, Bronze Star, or other similar citations is considered supportive evidence of participation in a stressful episode. Other supportive evidence includes, but is not limited to, plane crash, ship sinking, explosion, rape or assault, duty on a burn ward or in graves registration unit. POW status is conclusive evidence of an inservice stressor.

f. *Development for PTSD.* If the evidence shows the veteran engaged in combat with the enemy and the claimed stressor is related to combat, no further development for evidence of a stressor is necessary. See subparagraph e above. If the claimed stressor is not combat related, a history of a stressor as related by the veteran is, in itself, insufficient. Service records must support the assertion that the veteran was subjected to a stressor of sufficient gravity to evoke the symptoms in almost anyone. The existence of a recognizable stressor or accumulation of stressors must be supported. It is important

the stressor be described as to its nature, severity and date of occurrence.

MANUAL M21–1, Part VI, para. 7.46(e), (f) (Dec. 21, 1992).

▪ Thus, under 38 U.S.C.A. § 1154(b), 38 C.F.R. § 3.304, and the applicable MANUAL M21–1 provisions, the evidence necessary to establish the occurrence of a recognizable stressor during service to support a claim of entitlement to service connection for PTSD will vary depending on whether or not the veteran was "engaged in combat with the enemy." *See Hayes, supra; see also Hamilton v. Derwinski,* 2 Vet.App. 671, 674–75 (1992), *appeal dismissed on other grounds,* 4 Vet.App. 528 (1993). Where it is determined, through recognized military citations or other supportive evidence, that the veteran was engaged in combat with the enemy and the claimed stressors are related to such combat, the veteran's lay testimony regarding claimed stressors must be accepted as conclusive as to their actual occurrence and no further development for corroborative evidence will be required, provided that the veteran's testimony is found to be "satisfactory," e.g., credible, and "consistent with the circumstances, conditions, or hardships of such service." 38 U.S.C.A. § 1154(b); 38 C.F.R. § 3.304(d), (f); MANUAL M21–1, Part VI, para. 7.46(e)-(f); *see Hayes, supra.* Where, however, the VA determines that the veteran did not engage in combat with the enemy, or that the veteran did engage in combat with the enemy but the claimed stressor is not related to such combat, the veteran's lay testimony, by itself, will not be enough to establish the occurrence of the alleged stressor. *Id.* Instead, the record must contain service records which corroborate the veteran's testimony as to the occurrence of the claimed stressor. *Id.* Although the new MANUAL M21–1 provisions and 38 C.F.R. § 3.304(f) became effective after appellant filed his appeal with this Court, the Court and the VA are required to apply these substantive changes to appellant's claim to the extent that they are more liberal than the earlier provisions. *See Swann v. Brown,* 5 Vet.App. 229, 232 (1993); *see also Hayes,* 5 Vet.App. at 66–67.

▪ In view of the "reasons or bases" requirement and the controlling statutory and regulatory law regarding evidence of stressors, in order for this Court to effectively review the BVA's denial of a claim for service connection for PTSD, the BVA, perforce, must make specific findings of fact as to whether or not the veteran was engaged in combat with the enemy and, if so, whether the claimed stressor is related to such combat. Further, the BVA must provide adequate reasons or bases for its finding, including a clear analysis of the evidence which it finds persuasive or unpersuasive with respect to that issue. *See Gilbert.*

## C. Determining Whether Stressful Event is Valid Stressor To Support PTSD Diagnosis: Combat Service vs. Service in a Combat Zone

▪ Once the occurrence of a stressful episode is established, it then must be determined whether the claimed stressful event was of sufficient gravity to support a diagnosis of PTSD. The DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS–III–R (3d ed. 1987) (DSM–III–R) has been adopted by the VA for rating psychiatric conditions such as PTSD. *See* 38 C.F.R. § 4.125 (1993). According to DSM–III–R, the "essential feature" of PTSD is "a psychologically distressing event that is outside the range of usual human experience." DSM–III–R, at 247. The DSM–III–R notes in this context that the "most common traumata" include a threat to one's life, a threat to the lives of one's friends, or seeing another person who has recently been seriously injured or killed as the result of an accident or physical violence. *Id.* The DSM–III–R specifically lists "military combat" as a type of traumatic event which often gives rise to PTSD. *Id.* at 248. VA's MANUAL M21–1, applying the guidelines set forth in DSM–III–R, states as follows:

**Essentials of diagnosis—**

To justify the clinical diagnosis [of PTSD] and to assure uniformity of its use, the following findings should appear in the clinical examination:

(1) The person has experienced an event that is outside the range of usual human

experience and that would be markedly distressing to almost anyone, e.g., serious threat to one's life or physical integrity; serious threat or harm to one's children, spouse, or other close relatives and friends; sudden destruction of one's home or community; or seeing another person seriously injured or killed as the result of an accident or physical violence.

Manual M21–1, Part VI, para. 7.46(b)(1) (December 21, 1992).

██ Thus, pursuant to both the DSM–III–R and the MANUAL M21–1 provisions, for purposes of supporting a diagnosis of PTSD, the facts must establish that the veteran was exposed to a sufficient stressor which is defined as "an event that is outside the range of usual human experience." A veteran seeking service connection for PTSD may not rely on mere service in a combat zone, solely in and of itself, to support a diagnosis of PTSD. Rather, in order to support a diagnosis of PTSD, a stressor must consist of an event during such service "that is outside of the range of usual human experience and that would be markedly distressing to almost anyone," such as experiencing an immediate threat to one's life or witnessing another person being seriously injured or killed. *Id.* It is the distressing event, rather than the mere presence in a "combat zone," which may constitute a valid stressor for purposes of supporting a diagnosis of PTSD. *See Wood v. Derwinski,* 1 Vet.App. 190, 193 (1991), *reconsideration den.,* 1 Vet.App. 406 (1991) (noting that "neither appellant's military specialty (cannoneer), nor his service records, disclose[d] that the nature of his duties exposed him to a more than ordinary stressful environment, even given the fact that service in a combat zone is stressful in some degree to all who are there, whatever their duties and experiences.").

## III. APPLICATION OF LAW TO FACTS

### A. Breach of the Statutory Duty to Assist

██ The BVA found that appellant's claim for service connection for PTSD was well grounded and that the VA had satisfied its duty to assist appellant in developing the claim. *Zarycki,* BVA 92–10505, at 3; R. at 5. After carefully reviewing the evidentiary record, the Court agrees that appellant fulfilled his initial burden of submitting a well-grounded claim; as noted in Part I, *supra,* the record contains several diagnoses of PTSD by VA neuropsychiatrist, psychiatrists, and psychologists (R. at 41, 78, 81), including one psychiatrist who noted that appellant was "overtly anxious when he was talking about his Vietnam experiences" (R. at 78) and another psychologist who noted that "[l]ying just beneath the surface is a great store of combat/mayhem themes (R. at 81)." In addition, the record contains appellant's lay statements and hearing testimony to the effect that he had been engaged in combat with the enemy and had been exposed to significant stressors during his service in Vietnam (R. at 84–92, 101–03, 116–17). Because appellant's claim for service connection for PTSD was well grounded, the Board was required to assist him in developing the facts pertinent to his claim. *See Murphy, supra; see also Grottveit v. Brown,* 5 Vet.App. 91 (1993). Contrary to its findings in its decision, however, the BVA did not carry out its statutory duty to assist.

██ Although the ESG was unable to document all of the information supplied by appellant related to his alleged combat experiences in Vietnam and the alleged stressors he experienced during that period of service, it was able to verify some of the information. Further, and more importantly, the ESG informed the VA that it required additional information from appellant in order to investigate further his claimed experiences in service (R. at 94–96). Despite the fact that appellant had volunteered to provide additional information if needed (R. at 103), the record contains no evidence to suggest that the VA ever requested such information from appellant. In failing to accept appellant's offer and to afford him the opportunity to respond to the ESG's request for additional information, the VA breached its statutory duty to assist appellant in developing his claim.

██ The breach of the duty to assist takes on additional significance in the context

of this appeal because the BVA did not make a specific factual finding as to whether or not appellant was "engaged in combat with the enemy." Instead, the Board appears to have intertwined the issue of whether appellant was engaged in combat with the enemy with whether there was corroborative evidence of his alleged in-service stressors:

A valid diagnosis of [PTSD] requires, first of all, that there be a confirmed service stressor. American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders 250 (3rd ed., revised, 1987). When referring to combat situations, there must be corroboration that the veteran was exposed to more than the ordinary stressful environment of a combat zone. We are not bound to accept either the veteran's uncorroborated account of his Vietnam experiences or a psychiatrist's unsubstantiated post-service opinions that the veteran's alleged [PTSD] had its origins in service. Wood v. Derwinski, [1 Vet.App. at 192].

The veteran's DD Form 214, Report of Transfer or Discharge, does not list any decorations that would indicate actual combat. Although the veteran initially contended that he won a Bronze Star, he later withdrew this contention. There are no complaints or findings in service of a psychiatric disorder, and the first post-service evidence of a psychiatric problem was not until April 1983, when the veteran was hospitalized due to the stress of a divorce, alcohol use, financial difficulties, and his inability to find a job. Although [PTSD] was subsequently diagnosed, this diagnosis was based on the veteran's subjective history. His contentions that his unit was involved in a ground attack on LZ Crystal in March 1968 could not be verified by the [ESG], which did determine that LZ Crystal received heavy mortar and recoilless fire resulting in light damage in March 1968. Additionally, the veteran's contentions that he was in an armored personnel carrier in approximately June 1970 that was ambushed, resulting in several deaths, could not be verified. Since there is no independent evidence confirming that the veteran was exposed to more than the ordinary stress inherent in service in a combat zone, service connection for [PTSD] is not warranted. *Wood.*

*Zarycki,* BVA 92–10505, at 4 (underscoring in original); R. at 6.

On remand, appellant will have the opportunity to provide the VA with the supplemental information requested by the ESG. Appellant is reminded that "[t]he duty to assist is not always a one-way street. If a veteran wishes help, he cannot passively wait for it in those circumstances where he may or should have information that is essential in obtaining the putative evidence." *See Wood,* 1 Vet.App. at 193 (duty to assist fulfilled where two attempts were made by VA to obtain necessary information despite the sparsity of data supplied by appellant). After fulfilling its duty to assist, the BVA then will have the opportunity to make a specific factual finding as to whether or not appellant was engaged in combat with the enemy based on all the evidence of record and to support its finding with an adequate statement of reasons or bases. If the BVA determines that appellant was engaged in combat with the enemy and that appellant's alleged stressors are related to such combat, appellant's lay testimony, without further evidentiary development, will be enough to establish the occurrence of the claimed in-service stressors provided that such lay testimony is satisfactory, e.g., credible, and consistent with the circumstances, conditions, or hardships of such service. The BVA will then need to determine (1) whether appellant's claimed stressors are sufficient to support a diagnosis of PTSD, i.e., events during service that are outside the range of usual human experience and that would be markedly distressing to almost anyone, *see* Part II.C., *supra,* and (2) whether appellant's currently diagnosed PTSD is causally related to those stressors. If the BVA finds that appellant was not engaged in combat with the enemy, or that appellant was engaged in combat with the enemy but that his claimed stressors are not related to such combat, it then will have to determine, as a preliminary matter, whether appellant's testimony as to the claimed stressor is corroborated sufficiently by service records to establish the occurrence of the claimed stressful events. *See* Manual M21–1, Part VI, para. 7.46(e),

(f); *Hayes*, 5 Vet.App. at 66–68; *compare Ascherl v. Brown*, 4 Vet.App. 371, 378 (1993) (case remanded for BVA to address whether appellant was engaged in combat with the enemy, to examine the circumstances, conditions, and hardships surrounding his period of service, and, if necessary, to corroborate the occurrence of his alleged service-related stressors). Next, the BVA will have to determine whether the claimed stressful event is a sufficient stressor to support a PTSD diagnosis, *see* Part II.C., *supra*, and whether appellant's current PTSD is related to the claimed in-service stressful episode.

### B. Additional Arguments

Before this Court, appellant contends that the BVA erred by misapplying the diagnostic criteria for PTSD in the DSM–III–R; specifically, he posits that to support a diagnosis of PTSD stemming from a claimant's military service, a stressor must consist of exposure to "more than an ordinary stressful environment" rather than "more than the ordinary stressful environment *of a combat zone*," as stated by the BVA in its decision. Appellant's Br. at 9 (emphasis added). Appellant essentially contends that service in a "combat zone" may, in and of itself, constitute a sufficient stressor to support a diagnosis of PTSD. For the reasons discussed in Part II.C, *supra*, appellant's contentions are without merit.

Appellant also asserts that the BVA erred in (1) basing its decision on the opinions of one psychiatrist rather than a board of two psychiatrists as the BVA had previously directed in its December 1990 decision; (2) rejecting the medical diagnoses supporting appellant's claim based on its own unsubstantiated medical conclusions; (3) failing to give due consideration to appellant's lay testimony; and (4) failing to apply the benefit of the doubt doctrine. Because the BVA determined that there was no evidence of in-service stressors, however, it never reached the issue of whether or not appellant currently suffers from PTSD, irrespective of whether or not it would be related to service. As a result, the BVA did not address the medical evidence and lay testimony supporting appellant's current diagnoses of PTSD, did not rely on any medical evidence to support its decision, and did not discuss the application of the benefit of the doubt doctrine. However, in view of the need for a remand for readjudication, there is no need for the Court to address these arguments at this time. "A remand is meant to entail a critical examination of the justification for the decision. The Court expects that the BVA will reexamine the evidence of record, seek any other evidence the Board feels is necessary, and issue a timely, well-supported decision in this case." *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991). Moreover, if the circumstances warrant, the BVA is authorized and obligated to remand the claim to the RO for further development. *See* 38 C.F.R. § 19.9 (1993); *Littke v. Derwinski*, 1 Vet.App. 90 (1990).

### IV. CONCLUSION

Upon consideration of the record and the filings of the parties, the Court finds that a remand is warranted. Accordingly, the Secretary's improvident motion for summary affirmance is **DENIED**, the BVA's April 21, 1992, decision is **VACATED**; and this matter is **REMANDED** for further proceedings consistent with this opinion.