Citation Nr: 1504649 
Decision Date: 01/30/15 Archive Date: 02/09/15

DOCKET NO. 11-11 330 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Seattle, Washington


THE ISSUES

1. Entitlement to an effective date earlier than August 21, 2008, for the grant of service connection for posttraumatic stress disorder (PTSD).

2. Whether there was clear and unmistakable error (CUE) in a September 2004 RO rating decision denying entitlement to service connection for PTSD.

3. Entitlement to reconsideration of the September 2004 rating decision that denied service connection for PTSD.


REPRESENTATION

Appellant represented by: African American PTSD Association


WITNESS AT HEARINGS ON APPEAL

Appellant
ATTORNEY FOR THE BOARD

J. Smith, Counsel


INTRODUCTION

Please note this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2014). 38 U.S.C.A. § 7107(a)(2) (West 2014).

The Veteran served on active duty from March 1989 to September 1992.

These matters come before the Board of Veterans' Appeals (Board) from a March 2010 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Seattle, Washington. In that decision, the RO granted entitlement to service connection for PTSD and assigned an effective date of August 21, 2008. The Veteran timely appealed the effective date assigned, and argued in part that he was entitled to an earlier effective date based on CUE in a prior RO decision.

In July 2010, the Veteran testified during a hearing before a decision review officer (DRO) at the RO. In December 2011, the Veteran testified during a hearing at the RO before the undersigned. Transcripts of each hearing are of record.

In May 2012, the Board denied the appeal.

In September 2013, the appellant received notice in accordance with Bryant v. Shinseki, 23 Vet. App. 488 (2010). In a September 2013 response form, he elected that the May 2012 decision be vacated and a new decision be issued. He also requested a new hearing.

In June 2014, the Board vacated its May 2012 decision.

In November 2014, the Veteran testified at a hearing before the undersigned using video-conferencing technology; a transcript of that hearing is of record.
The Board notes that a statement of the case (SOC) on claims for service connection for chronic fatigue syndrome and joint pains was issued in October 2013. The Veteran did not perfect an appeal. As such, these issues are not currently on appeal and will not be addressed by the Board.

The issue of entitlement to a total rating based on individual unemployability has been raised by the record. See February 24, 2014 VBMS Entry. However, it has not been adjudicated by the Agency of Original Jurisdiction (AOJ). Therefore, the Board does not have jurisdiction over it, and it is referred to the AOJ for appropriate action. 38 C.F.R. § 19.9(b) (2014).

The Board has considered documentation included in Virtual VA and VBMS. 

The issue of entitlement to reconsideration of the September 2004 rating decision that denied service connection for PTSD is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. The claim for entitlement to service connection for PTSD that was granted was an application to reopen received by the RO on August 21, 2008.

2. In September 2004, the RO denied entitlement to service connection for PTSD. The Veteran neither appealed this decision nor submitted new and material evidence within the one year appeal period.

3. The September 2004 rating decision denying entitlement to service connection for PTSD did not contain an outcome determinative error in applying the law extant at that time to the facts that were before the adjudicator.

CONCLUSIONS OF LAW

1. The criteria for an effective date earlier than August 21, 2008, for the grant of entitlement to service connection for PTSD have not been met. 38 U.S.C.A. §§ 5107, 5110 (West 2014); 38 C.F.R. §§ 3.1(p), 3.102, 3.155, 3.156(b), 3.157, 3.400 (2014).

2. The RO's September 2004 decision denying entitlement to service connection for PTSD was not clearly and unmistakably erroneous. 38 U.S.C.A. §§ 5109A, 7105(c) (West 2014); 38 C.F.R. §§ 3.104, 3.105 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veterans Clams Assistance Act of 2000 as amended (VCAA) and implementing regulations impose obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2014).

As noted above, the claim for an earlier effective date arises from the Veteran's disagreement with the effective date assigned in connection with the grant of service connection for PTSD. The courts have held, and VA's General Counsel has agreed, that where an underlying claim for service connection has been granted and there is disagreement as to "downstream" questions, the claim has been substantiated and there is no need to provide additional VCAA notice or prejudice from absent VCAA notice. Hartman v. Nicholson, 483 F.3d 1311, 1314-15 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112, 116-17 (2007); VAOPGCPREC 8-2003 (2003). The Court has elaborated that filing a notice of disagreement begins the appellate process, and any remaining concerns regarding evidence necessary to establish a more favorable decision with respect to downstream elements (such as an effective date) are appropriately addressed under the notice provisions of 38 U.S.C.A. §§ 5104 and 7105 (West 2014). Goodwin v. Peake, 22 Vet. App. 128, 137 (2008). Moreover, with regard to the issue of whether there was CUE in the September 2004 rating decision, the VCAA is inapplicable. Livesay v. Principi, 15 Vet. App. 165, 179 (2001) (en banc). Consequently, further discussion of the VCAA's notice provisions is unnecessary.

The VCAA also requires VA to make reasonable efforts to help a claimant obtain evidence necessary to substantiate his claim. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159(c), (d). This "duty to assist" contemplates that VA will help a claimant obtain records relevant to his claim, whether or not the records are in Federal custody, and that VA will provide a medical examination or obtain an opinion when necessary to make a decision on the claim. 38 C.F.R. § 3.159(c)(4). In this case, VA obtained the Veteran's service treatment records (STRs), service personnel records, and all of the identified post-service records and thus complied with its duty to assist. As to the argument of the Veteran's representative that VA's failure to comply with its duty to assist warrants a finding of CUE in the September 2004 rating decision, this argument must fail as a matter of law for the reasons discussed below.

Additionally, the Veteran testified at a November 2014 hearing before the undersigned Veterans Law Judge (VLJ). During the hearing, the VLJ discussed with the Veteran and elicited information with regard to his claims. The VLJ clarified the issues on appeal, clarified the theories of entitlement, explained the concepts of earlier effective dates and CUE, identified an evidentiary deficit, and suggested the submission of additional evidence to support the Veteran's claims. The actions of the VLJ supplement the VCAA and comply with any related duties owed during a hearing. 38 C.F.R. § 3.103.

For the reasons set forth above, the Board finds that VA has complied with the VCAA's notification and assistance requirements. The claim for entitlement to an earlier effective date for the grant of service connection for PTSD and the motion alleging CUE in the September 2004 rating decision denying entitlement to service connection for PTSD are thus ready to be considered on the merits.

Analysis
 
Unless specifically provided otherwise, the effective date of an award of disability compensation is set in accordance with the facts found, but cannot be earlier than the date of receipt of the claim for the compensation that was granted. 38 U.S.C.A. § 5110(a). The effective date of an award of disability compensation to a veteran is the day following separation from service if the claim for compensation was received within one year of separation. 38 U.S.C.A. § 5110(b)(1). There is no evidence or argument in this case that a claim for entitlement to service connection for PTSD was filed within a year of the Veteran's September 1992 separation from service, and 38 U.S.C.A. § 5110(b)(1) is therefore inapplicable. In this case, the claim for entitlement to service connection for PTSD that was granted was received on August 21, 2008. A previous claim for entitlement to service connection for PTSD was denied in September 2004. Generally, when granting entitlement to service connection for a disability in response to an application to reopen a claim that had previously been denied, VA cannot assign an effective date earlier than the date of receipt of the application to reopen. See 38 U.S.C.A. § 5110(a); 38 C.F.R. §§ 3.400(r). See also Comer v. Peake, 552 F.3d 1362, 1370 (Fed. Cir. 2009) ("The earliest effective date for an award based on a veteran's request to reopen a final decision based on new and material evidence is generally the date that the application to reopen was filed"). There are exceptions to this general rule, but none are applicable in this case as shown below.

A claim is defined as a formal or informal communication in writing requesting a determination of entitlement or evidencing a belief in entitlement to a benefit. 38 C.F.R. §§ 3.1(p); 3.155 (2014). Any communication or action from a claimant indicating an intent to apply for one or more benefits under the laws administered by VA and which identifies the benefit sought, may be considered an informal claim. 38 C.F.R. § 3.155(a). Thus, the essential elements for any claim, whether formal or informal, are "(1) an intent to apply for benefits, (2) an identification of the benefits sought, and (3) a communication in writing." Brokowski v. Shinseki, 23 Vet. App. 79, 84 (2009); see also MacPhee v. Nicholson, 459 F.3d 1323, 1326-27 (Fed. Cir. 2006) (holding that the plain language of the regulations requires a claimant to have an intent to file a claim for VA benefits). When determining the effective date of an award of compensation benefits, the Board is required to review all the communications in the file, after the last final disallowance of the claim, which could be interpreted to be a formal or informal claim for benefits. See Lalonde v. West, 12 Vet. App. 377, 380-381 (1999).
Additionally, in some cases, a report of examination or hospitalization may be accepted as an informal claim for benefits. 38 C.F.R. § 3.157(b). 

In September 2004, the RO denied entitlement to service connection for PTSD. Although notified of this denial in a letter dated later that month, the Veteran neither appealed the denial nor submitted new and material evidence within the one year appeal period. Consequently, the denial became final. See 38 C.F.R. § 20.1103. See also King v. Shinseki, 23 Vet. App. 464, 466 (2010) ("Although the effective date of an award based on a claim reopened is generally the date of receipt of the application, if new and material evidence is received within one year after the date of mailing of an RO decision, it may be "considered as having been filed in connection with the claim which was pending at the beginning of the appeal period' that prevents an initial determination from becoming final") (quoting 38 C.F.R. § 3.156(b)).

The Veteran's next communication to the RO were October 2007, November 2007, January 2008, April 2008, and July 2008 statements requesting copies of various documents from the claims file pursuant to the Freedom of Information Act (FOIA). As these communications neither indicated an intent to apply for benefits nor an identification of the benefits sought, they did not constitute an informal claim. Brokowski, 23 Vet. App. at 84.

The Veteran's next communication was the statement in support of claim received on August 21, 2008, in which the Veteran indicated he was "resubmitting" his claim for entitlement to service connection for PTSD and also alleged CUE in the September 2004 rating decision. 

In June 2009, the RO deemed the August 2008 communication an application to reopen, granted the application, and denied the reopened claim on the merits. After receiving additional evidence and conducting a December 2009 DRO hearing, the RO granted the claim for entitlement to service connection for PTSD in March 2010 and assigned the August 21, 2008 date of the application to reopen as the effective date. As there was no communication or submission of evidence from the Veteran evincing an intent to apply for benefits or identifying the benefits sought between the September 2004 denial and the August 21, 2008 application to reopen, an earlier effective date is not warranted based on a prior, pending, unadjudicated claim or submission of new and material evidence within the one year appeal period. Id. In addition, entitlement to service connection for PTSD was not based on a liberalizing VA law or issue, see 38 U.S.C.A. § 5110(g), 38 C.F.R. § 3.114, and an effective date is therefore not warranted on this basis, or on the basis of any other exception when granting entitlement to service connection for a disability in response to an application to reopen a claim that had previously been denied.

The Board notes that, at the July 2010 RO hearing, the Veteran submitted an April 1993 letter that he had received from a VA Medical Center (VAMC) indicating that the clinical staff had reviewed his application for treatment and the staff recommended that his request be denied. It was the opinion of the staff that he and his wife would be better served by his being in a domestic violence treatment program. Although this letter was not in the claims file until after the time period between the September 2004 rating and the August 21, 2008 informal claim, records generated by VA facilities that may have an impact on the adjudication of a claim are considered constructively in the possession of VA adjudicators, regardless of whether those records are physically in the claims file. See Bell v Derwinski, 2 Vet. App. 611, 613 (1992). However, the letter reflects a desire to apply for treatment rather than benefits. In addition, even if considered a report of VA examination or hospitalization, the letter would not constitute an informal claim under 38 C.F.R. § 3.157 because compensation had not been granted for any disability or denied as not being of a compensable degree. 38 C.F.R. § 3.157(b).

In May 2012, the Board found that an earlier effective date for the award of service connection for PTSD was not warranted, based on the above evidence. Subsequent to the Board's decision, additional evidence was associated with the record. The majority of this evidence pertains to other claims and is inapplicable to this appeal.

Potentially relevant evidence added to the paper and electronic files includes a copy of the Veteran's November 5, 2003 claim which was re-submitted in June 2012, VA treatment records from 2003, and VA treatment records from 2007 and 2008 that predate the current effective date of August 21, 2008. 
The November 5, 2003 claim cannot establish an earlier effective date. It is an exact duplicate of the document already of record, and as the September 2004 rating decision is final, an effective date prior to that rating decision cannot be established. The VA treatment records do not demonstrate any intent on the part of the Veteran to seek service connection for a psychiatric condition. See Lalonde, 12 Vet. App. at 382 (where appellant had not been granted service connection, mere receipt of medical records could not be construed as informal claim.) Moreover, the VA treatment records from 2003 cannot serve as an informal claim given the finality of the September 2004 rating decision. The treatment records dated from 2007 and 2008 cannot constitute an informal claim under 38 C.F.R. § 3.157 because compensation had not been granted for any disability or denied as not being of a compensable degree. 38 C.F.R. § 3.157(b) . 

Therefore, under the laws and regulations pertaining to effective dates, the August 21, 2008 date of the application to reopen that was granted is the appropriate effective date for the grant of entitlement to service connection for PTSD in this case. The preponderance of the evidence is therefore against a claim for entitlement to an earlier effective date based on these laws and regulations and the benefit of the doubt rule is not for application. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; Fagan v. Shinseki, 573 F.3d 1282, 1287 (Fed. Cir. 2009).

To the extent that the Veteran seeks to revisit the RO's prior, September 2004 rating decision as part of his earlier effective date claim (in the absence of an argument that there was CUE in such a decision as discussed below), this would constitute the type of freestanding earlier effective date claim that the Court has held must be dismissed. Rudd v. Nicholson, 20 Vet. App. 296 (2006).

However, one exception to the finality doctrine discussed above occurs when there CUE is found in a prior RO decision. If the evidence establishes such CUE, the prior decision will be reversed or amended; a finding of CUE has the same effect as if the corrected decision had been made on the date of the reversed decision. 38 C.F.R. §§ 3.104(a), 3.105(a). In correspondence including his August 2008 application to reopen and May 2010 notice of disagreement (NOD) as well as the RO and Board hearings, the Veteran and his representative claimed that there was CUE in the prior, September 2004 denial of entitlement to service connection for PTSD.

In determining whether a prior determination involves CUE, the Court has established a three-prong test. The three prongs are: (1) either the correct facts, as they were known at the time, were not before the adjudicator (i.e., there must be more than simple disagreement on how the facts were weighed or evaluated), or the statutory/regulatory provisions extant at that time were not correctly applied; (2) the error must be "undebatable" and of the sort which, if it had not been made, would have manifestly changed the outcome at the time it was made; and (3) a determination that there was CUE must be based on the record and law that existed at the time of the adjudication in question. Damrel v. Brown, 6 Vet. App. 242, 245 (1994) (citing Russell v. Principi, 3 Vet. App. 310, 313-14 (1992) (en banc)).

CUE is a very specific and rare kind of "error." It is the kind of error in fact or law that, when called to the attention of later reviewers, compels the conclusion, to which reasonable minds could not differ, that the result would manifestly have been different but for the error. Generally, a finding of CUE requires that the correct facts, as they were known at the time, were not before the RO, or the statutory and regulatory provisions extant at the time were incorrectly applied. Even when the premise of error is accepted, if it is not absolutely clear that a different result would have ensued, the error complained of cannot be ipso facto clear and unmistakable. Fugo v. Brown, 6 Vet. App. 40, 43-44 (1993) (citing Russell, 3 Vet. App. at 313-14). A determination of CUE must be based on the record and the law that existed at the time of the prior adjudication. Baldwin v. West, 13 Vet. App. 1 (1999); Caffrey v. Brown, 6 Vet. App. 377 (1994).

The Board notes that an assertion of CUE is a collateral attack on an otherwise final rating decision by a VA regional office. Smith v. Brown, 35 F.3d 1516, 1527 (Fed. Cir. 1994). As such, there is a presumption of validity that attaches to a final decision, and when such a decision is collaterally attacked the presumption becomes even stronger. Fugo, 6 Vet. App. at 43-44. Therefore, a claimant who seeks to obtain retroactive benefits based on CUE has a much heavier burden than that placed on a claimant who seeks to establish prospective entitlement to VA benefits. Akins v. Derwinski, 1 Vet. App. 228, 231 (1991). The Veteran has not met this burden, for the following reasons.

At the time of the RO's September 2004 decision, the evidence before it consisted of the following. The STRs, which did not contain notes relating to complaint, symptoms, treatment, or diagnoses of psychiatric disability, and contained a normal psychiatric separation examination report. The service personnel records, which did not indicate that the Veteran received any decorations, medals, badges, citations, or campaign ribbons indicating that he participated in combat with the enemy. The Veteran's December 2003 claim and statement in support, in which he indicated that he had served in Operation Desert Shield/Storm and that he had PTSD as a result of this service. An August 2003 Persian Gulf Protocol examination in which the Veteran indicated to the VA examiner that he had seen many casualties, particularly Iraqi and Bedouins, had several traumatic experiences including on one occasion seeing Bedouins who had been tortured and buried alive by Iraqi troops, and had several life threatening experiences, while in the Gulf. The physical examination section of the report indicated that the Veteran was depressed-appearing, and that cognitive functioning was intact. The examiner wrote that the Veteran had "symptoms suggestive of PTSD and/or depression and would be sent for a mental health evaluation." VA treatment notes beginning in August 2003 indicate that a PTSD outpatient clinic social worker had attempted to contact the Veteran several times and sent a letter asking the Veteran to contact him. A November 2003 VA Persian Gulf Clinic progress note indicated that the Veteran did not follow up with the PTSD clinic referral because he was working two jobs and did not have the time. The assessment indicated PTSD and depression and that a consultation was sent to the PTSD clinic. A December 2003 VA POC orientation note indicated that the diagnosis treated was PTSD and the Veteran attended an orientation session, the clinic's structure and guidelines were discussed, and the Veteran indicated he would contact the clinic if he were interested in scheduling an intake appointment. A December 2003 VA "no show template" indicated that the Veteran failed to make a scheduled new appointment. An April 2004 VCAA letter from the RO to the Veteran that included information as to how to establish entitlement to service connection for PTSD as well as an enclosed questionnaire requesting information in support of a claim for entitlement to service connection for PTSD. Neither a completed questionnaire nor a reply to the letter was of record at the time of the RO's September 2004 rating decision.

At the time of the RO's September 2004 rating decision, VA regulations required the following to establish entitlement to service connection for PTSD: (1) medical evidence establishing a diagnosis of the disorder in accordance with 38 C.F.R. § 4.125, which in turn required a diagnosis consistent with DSM-IV, (2) credible supporting evidence that the claimed in-service stressor(s) actually occurred, and (3) a link, established by medical evidence, between current symptomatology and the claimed in-service stressor. 38 C.F.R. § 3.304(f).

The evidence necessary to establish the occurrence of a recognizable stressor during service to support a diagnosis of PTSD varied depending upon whether the veteran engaged in "combat with the enemy." See 38 U.S.C.A. § 1154(b); 38 C.F.R. § 3.304(f); Zarycki v. Brown, 6 Vet. App. 91, 98 (1993). Participation in combat, a determination that was to be made on a case by case basis, required that the veteran have personally participated in events constituting an actual fight or encounter with a military foe or hostile unit or instrumentality. See VAOPGCPREC 12-99 (October 18, 1999). If VA determined the veteran engaged in combat with the enemy and his alleged stressor is combat-related, then his lay testimony or statement was accepted as conclusive evidence of the stressor's occurrence and no further development or corroborative evidence was required - provided that such testimony was found to be "satisfactory," i.e., credible and "consistent with circumstances, conditions or hardships of service." See 38 U.S.C.A. § 1154(b); 38 C.F.R. § 3.304(f); Zarycki, 6 Vet. App. at 98. If, however, VA determined either that the veteran did not engage in combat with the enemy or that he did engage in combat, but that the alleged stressor is not combat related, then his lay testimony, in and of itself, was not sufficient to establish the occurrence of the alleged stressor. Instead, the record had to contain evidence that corroborated his testimony or statements. See Zarycki, 6 Vet. App. at 98.

Where a determination was made that the veteran did not "engage in combat with the enemy," or that the claimed stressor was not related to combat, the veteran's lay testimony alone will not be enough to establish the occurrence of the alleged stressor. In such cases, the record had to contain service records or other corroborative evidence to substantiate or verify the veteran's testimony or statements as to the occurrence of the claimed stressor. See West (Carlton) v. Brown, 7 Vet. App. 70, 76 (1994); Zarycki, 6 Vet. App. at 98 (1993).

In its September 2004 rating decision, the RO noted the symptoms of PTSD on the August 2003 Persian Gulf examination, and the referral for an evaluation but the lack of follow through by the Veteran. The RO concluded that there was no definitive diagnosis of PTSD based on a full interview and assessment. The RO also noted that the Veteran did not complete or otherwise reply to the PTSD questionnaire sent with the April 2004 VCAA letter, and that this information was important in the decision process and was used to verify claimed stressors. The RO concluded by stating that information that would be necessary to further the claim would be a completed PTSD questionnaire and evidence of a current diagnosis.

In the written statements and hearing testimony, the Veteran and his representative claimed that there was CUE in the September 2004 rating decision. During the July 2010 RO hearing, the Veteran's representative argued that the Veteran had provided sufficient information at the time of the original claim for VA to verify his stressors: "[I]t's the VA's responsibility to gather these records. It's not like it's . . . some hospital or other where you're getting this. This is the same military unit. Okay. All of this is in archives. This is available information, so he should be penalized. The Veteran shouldn't be penalized for that." July 2010 RO Hearing Transcript, at 2. The Veteran also noted that he had sought VA treatment in 1993 and the April 1993 letter from the VAMC Mental Health Clinic denying treatment. See July 2010 RO Hearing Transcript, at 15. Similarly, during the Board hearing, the Veteran's representative stated that the basic argument was that it was "VA's responsibility to produce the military records and any and everything that's concerned with his active military duty time." Board hearing transcript, at 8. In addition, the Veteran indicated that he had responded to the RO's April 2004 letter and that a previous representative gave him a letter stating that, yes, the Veteran had written a letter in 2004 and the representative had "sent it up, and they don't understand why it didn't get in my file." Board Hearing Transcript, at 11. Prior to the Board hearing, in June 2011, a representative from a different veterans service organization sent a letter indicating that the Veteran was assisted by a veterans service officer (VSO) in May 2004 in writing a stressor letter in response to the April 2004 VCAA letter and that the letter was forwarded to VA but "for unknown reasons was not placed in his c-file." Attached to this letter was a May 2004 letter from the Veteran describing his Operation Desert Shield/Storm stressors. 

At the November 2014 hearing, the Veteran and his representative reasserted their arguments regarding VA's failure to assist him by not seeking records related to his claimed stressors, and regarding the missing May 2004 letter. They also presented general argument concerning the RO's consideration of evidence, including an April 1991 service record showing he did not receive an award due to behavioral issues and a 2003 VA treatment note of Dr. H., which was of record at the time of the decision.

The above discussion of the evidence and arguments reflects that a finding of CUE in the September 2004 rating decision is not warranted. To the extent that the Veteran and his representative contend that the RO's failure to obtain records relating to the Veteran's claimed stressor warrants a finding of CUE, such an argument must fail as a matter of law. Even assuming, without deciding, that the RO violated its duty to assist by not seeking records relating to the Veteran's claimed stressors, including information regarding his unit and assignments in the Persian Gulf, "The requirements that [CUE] be outcome determinative and be based on the record that existed at the time of the original decision make it impossible for a breach of the duty to assist to form the basis for a CUE claim." Cook v. Principi, 318 F.3d 1334, 1346 (Fed. Cir. 2002). Thus, the argument that the RO's failure to obtain records warrants a finding of CUE must be rejected. More importantly, the information provided by the Veteran was inadequate and general in nature, and any action taken by the RO in response would have been the type of fishing expedition that the Court has held is not appropriate. See Gobber v. Derwinski, 2 Vet. App. 470, 472 (1992) ("[T]he duty to assist is not a license for a 'fishing expedition' to determine if there might be some unspecified information which could possibly support a claim").

In addition, as to the Veteran's May 2004 response to the RO's April 2004 VCAA letter, while it is not clear why the letter was not associated with the claims file although sent by the Veteran's representative at that time, it is clear that the May 2004 letter was not in the VA record at the time of the September 2004 RO rating decision. Thus, regardless of whether the Veteran responded to the April 2004 letter with stressor information, and regardless of why this response did not find its way into the claims file, the response was not in the VA record at that time and that fact is dispositive. See Caffrey, 6 Vet. App. at 384 (Kramer, J., concurring) (requirements that the correct facts were not before the adjudicator, based on the record before VA at the time, "means facts so known at the time to be correct were in the VA record, but somehow were not actually in front of the adjudicator"; for example, an adjudicator stated there were only two items of evidence on a given point when the record contained three). Thus, the absence of the letter cannot be the basis of a finding of CUE in this case.
 
The April 1993 letter was constructively in VA's possession, see Bell, 2 Vet. App. at 613, but it did not indicate either that the Veteran was diagnosed with PTSD in accordance with DSM-IV or relate to verification of any of his claimed stressors. The evidence before the RO at the time of the September 2004 rating decision contained a VA examination report and treatment records indicating that the Veteran had symptoms of PTSD. The RO found that this did not constitute a valid diagnosis of PTSD under the applicable regulation. A claim that the evidence included enough detail to warrant a diagnosis of PTSD consistent with DSM-IV would constitute a mere disagreement with how the evidence was weighed, which is not a valid basis for a finding of CUE. Moreover, none of the claimed stressors were verified by the evidence before the RO at the time of the September 2004 rating decision and that evidence did not reflect that the Veteran engaged in combat with the enemy. The RO therefore did not misapply the law extant at the time in denying entitlement to service connection for PTSD based on the facts before it.

To the extent the Veteran disagrees with the RO's consideration of service records and 2003 treatment record of Dr. H, again, mere difference of opinion in the outcome of the adjudication or a disagreement as to how facts were weighed and evaluated does not provide a basis upon which to find that VA committed error during the adjudication process. See Luallen v. Brown, 8 Vet. App. 92, 96 (1995). While it is not clear that the April 1991 service record depicting behavioral problems was of record at the time of the RO's decision, the record is redundant of information contained in the Veteran's other personnel records that were considered by the RO. This document alone would not compel the conclusion, to which reasonable minds could not differ, that the result would manifestly have been different but for its omission. This cannot constitute a basis for finding CUE.

The Board must emphasize that the primary basis of the denial of service connection for PTSD in 2004 was the fact that the Veteran did not have a diagnosis of PTSD that met regulatory standards. 38 C.F.R. § 3.304(f). The arguments raised in regard to this issue are not outcome determinative.

For the foregoing reasons, it cannot be said that the ROs denial of entitlement to service connection for PTSD in its September 2004 decision contained an outcome determinative error in applying the law extant at that time to the facts that were before the adjudicator. The motion alleging CUE in the September 2004 rating decision as a basis for entitlement to an effective date earlier than August 21, 2008 must therefore be denied. The benefit-of-the-doubt rule is not for application. Andrews v. Principi, 18 Vet. App. 177, 186 (2004) (citing Russell, 3 Vet. App. at 313) (it is well established that the benefit-of-the-doubt doctrine can never be applicable in assessing a CUE claim because the nature of such a claim is that it involve more than a disagreement as to how the facts were weighed or evaluated).


ORDER

Entitlement to an effective date earlier than August 21, 2008, for the grant of service connection for PTSD, is denied.

As there was no CUE in a September 2004 rating decision denying entitlement to service connection for PTSD, the CUE motion with regard to this decision is denied.

REMAND

The March 2010 rating decision contains the following language. The record now includes additional evidence including information that was previously unavailable. The evidence of record corroborates your account of in service combat stressors. This language and the argument at hearings raise the issue of whether the 2004 rating decision should be considered based upon the provisions of 38 C.F.R. § 3.156(c).

Accordingly, this matter is REMANDED for the following action:

The AOJ should review the record and determine if the 2004 rating decision should be reconsidered under the provisions of 38 C.F.R. § 3.156(c). 

If upon completion of the above action the claim remains denied, the case should be returned after compliance with appellate procedure. 

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).


____________________________________________
H. N. SCHWARTZ
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs