Citation Nr: 1602960 
Decision Date: 01/29/16 Archive Date: 02/05/16

DOCKET NO. 09-18 933A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Houston, Texas


THE ISSUES

1. Whether a March 2006 notice of disagreement was timely to appeal a December 2004 rating decision. 

2. Whether there is clear and unmistakable error in a December 9, 2004 rating decision that denied service connection for posttraumatic stress disorder (PTSD). 

 3. Whether there is clear and unmistakable error in a December 9, 2004 rating decision that denied service connection for hypertension. 

 4. Whether there is clear and unmistakable error in a December 9, 2004 rating decision that denied service connection for diabetes mellitus. 

 5. Whether there is clear and unmistakable error in a December 9, 2004 rating decision that denied service connection for status post cervical discectomy with C5-6 fusion ("neck condition"). 

 6. Whether there is clear and unmistakable error in a December 9, 2004 rating decision that denied service connection for status post lumbar discectomy ("back condition").

7. Whether new and material evidence has been received sufficient to reopen the claim of entitlement to service connection for PTSD.

8. Whether new and material evidence has been received sufficient to reopen the claim of entitlement to service connection for hypertension.

9. Whether new and material evidence has been received sufficient to reopen the claim of entitlement to service connection for diabetes mellitus.

10. Whether new and material evidence has been received sufficient to reopen the claim of entitlement to service connection for status post cervical discectomy with C5-6 fusion.

11. Whether new and material evidence has been received sufficient to reopen the claim of entitlement to service connection for status post lumbar discectomy.

12. Entitlement to service connection for an acquired psychiatric disorder, to include posttraumatic stress disorder (PTSD).

13. Entitlement to service connection for hypertension, to include as secondary to PTSD, diabetes, and exposure to herbicides. 

14. Entitlement to service connection for diabetes mellitus, to include as secondary to exposure to herbicides.

15. Entitlement to service connection for status post cervical discectomy with C5-6 fusion.

16. Entitlement to service connection for status post lumbar discectomy.

17. Entitlement to service connection for peripheral neuropathy, to include as secondary to a neck and/or a low back condition.


REPRESENTATION

Veteran represented by: Texas Veterans Commission


ATTORNEY FOR THE BOARD

R. Kipper, Associate Counsel


INTRODUCTION

The Veteran served on active duty from June 1969 to March 1971.

These matters come before the Board of Veterans' Appeals (Board) on appeal from rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in Houston, Texas. 

In a December 2004 rating decision, the RO denied service connection for PTSD, hypertension, diabetes mellitus, a neck condition, a low back condition, a left knee condition, hearing loss, and tinnitus. 

In March 2006, the Veteran filed a "claim for benefits from erroneous December 9, 2004 decision - due to clear and unmistakable error." The Veteran alleged that the December 2004 rating decision had erroneously denied entitlement to service connection for PTSD, hypertension, diabetes mellitus, a neck condition, and a back condition. With respect to the left knee, hearing loss, and tinnitus claims, the Veteran "reserve[d] the right to argue these claims upon receipt of his entire service medical file." 

In April 2006, the RO sent the Veteran a letter that noted that he had submitted an untimely notice of disagreement (NOD) in March 2006 with respect to a December 2004 denial of service connection for PTSD, hypertension, diabetes, back and neck disabilities, a left knee condition, hearing loss, and tinnitus. The RO informed the Veteran that it had accepted the March 2006 correspondence as a request to reopen claims for PTSD, hypertension, diabetes, status post cervical discectomy with C5-6 fusion, status post lumbar discectomy, a left knee condition, hearing loss, and tinnitus. The Veteran filed an NOD with this letter in May 2006.

In a September 2006 rating decision, the RO found that no revision was warranted to its previous December 2004 decision to deny service connection for PTSD, hypertension, diabetes, status post cervical discectomy with C5-6 fusion, and status post lumbar discectomy. The RO also found that no new and material evidence had been received to reopen the issues of entitlement to service connection for PTSD, hypertension, diabetes, status post cervical discectomy with C5-6 fusion, and status post lumbar discectomy. The Veteran filed a NOD with this decision in September 2006. The RO sent the Veteran a statement of the case (SOC) in June 2009, and the Veteran submitted a substantive appeal that same month.

In November 2010, the Board remanded this case in order for the RO to issue an SOC on the issues of whether the March 2006 NOD was timely to appeal the December 2004 denial of service connection for PTSD, hypertension, diabetes mellitus, neck and back disabilities, a left knee condition, hearing loss, and tinnitus. The RO sent the Veteran an SOC in November 2010. 

In a July 2011 rating decision, the RO denied entitlement to service connection for peripheral neuropathy. 

The Board has recharacterized the issues on appeal to include the issues of whether new and material evidence has been received to reopen the claims of entitlement to service connection for PTSD, hypertension, diabetes, status post cervical discectomy with C5-6 fusion, and status post lumbar discectomy. 

In light of Clemons v. Shinseki, the Board has also recharacterized the reopened claim for service connection for PTSD to include other acquired psychiatric disorders. Clemons v. Shinseki, 23 Vet. App. 1 (2009) (holding that even though a veteran may only seek service connection for PTSD, the claim "cannot be limited only to that diagnosis, but must rather be considered a claim for any mental disability that may be reasonably encompassed").

The Board also notes that the Veteran appears to raise the issue of clear and unmistakable error (CUE) in the July 2011 rating decision denying entitlement to peripheral neuropathy. See August 2011 Notice of Disagreement. As will be discussed in detail below, CUE is a special type of error that the claimant alleges was made in a prior rating decision that the claimant did not appeal within the one-year time limit for filing an appeal to the Board. 38 U.S.C.A. §§ 5109A, 7105(b)(1), (c); 38 C.F.R. § 3.105(a). In this case, the Veteran filed a timely appeal of the July 2011 rating decision that denied service connection for peripheral neuropathy. Hence, the July 2011 adjudication is not a final decision and is not subject to a CUE determination. See Best v. Brown, 10 Vet. App. 322 (1997).

As noted by the Board in its November 2010 remand, the issues of whether there is clear and unmistakable evidence in the December 2004 rating decision that denied service connection for a left knee condition, bilateral hearing loss, and tinnitus have been raised by the record. Similarly, the issues of whether new and material evidence has been received to reopen the claims of entitlement to service connection for a left knee condition, bilateral hearing loss, and tinnitus were raised by the Veteran in the aforementioned March 2006 correspondence. However, to date, these issues have not been adjudicated by the Agency of Original Jurisdiction (AOJ). Therefore, the Board does not have jurisdiction over them, and they are referred to the AOJ for appropriate action. 38 C.F.R. § 19.9(b) (2015); see also Andre v. Principi, 301 F.3d 1354, 1361 (Fed. Cir. 2002) (holding that each new theory of CUE is a separate and distinct matter, and the Board lacks jurisdiction over any theory of CUE that has not been adjudicated by the RO in the first instance).

The issues of entitlement to service connection for PTSD, hypertension, diabetes mellitus, a neck condition, a low back condition, and peripheral neuropathy are addressed in the REMAND portion of the decision below and are REMANDED to the AOJ.


FINDINGS OF FACT

1. In a December 2004 rating decision, the RO denied entitlement to service connection for PTSD, hypertension, diabetes mellitus, a neck condition, a low back condition, a left knee condition, hearing loss, and tinnitus. 

2. Notice of the December 2004 decision was mailed to the Veteran's last address of record on December 15, 2004. He was informed of his appellate rights and that any disagreement with the rating decision should be submitted to his local RO within one year from the date of the letter.

3. The Veteran filed a notice of disagreement (NOD) with the RO's December 2004 rating decision by way of a letter dated on March 10, 2006, and date-stamped as received by the RO on March 14, 2006.

4. An NOD as to the December 2004 rating decision was not received by VA within the applicable one-year filing period following issuance of notice of the December 2004 rating decision. Nor was any new and material evidence submitted within the applicable appeal period.

5. The December 2004 rating decision that denied entitlement to service connection for PTSD, hypertension, diabetes mellitus, a neck condition, and a back condition was adequately supported by and consistent with the law and evidence then of record, and it did not contain undebatable error that would have manifestly changed the outcome of that determination.

6. Additional evidence received since the December 2004 rating decision is new to the record and relates to an unestablished fact necessary to substantiate the merits of the claim of entitlement to service connection for PTSD, hypertension, diabetes mellitus, a neck condition, and a back condition and raises a reasonable possibility of substantiating the claim of entitlement to service connection PTSD, hypertension, diabetes mellitus, a neck condition, and a back condition.


CONCLUSIONS OF LAW

1. The Veteran's March 2006 notice of disagreement to the December 2004 rating decision denying entitlement to service connection for PTSD, hypertension, diabetes mellitus, a neck condition, a low back condition, a left knee condition, hearing loss, and tinnitus was not timely. 38 U.S.C.A. § 7105 (West 2014); 38 C.F.R. § 20.302 (2015).

2. The December 2004 rating decision is final as to the claim of entitlement to service connection for PTSD, hypertension, diabetes mellitus, a neck condition, and a back condition. 38 U.S.C.A. § 7105 (West 2014); 38 C.F.R. §§ 3.156, 20.1103 (2015).

3. The December 2004 rating decision denying entitlement to service connection for PTSD was not clearly and unmistakably erroneous. 38 U.S.C.A. § 5110 (West 2014); 38 C.F.R. § 3.105 (2015).

4. The December 2004 rating decision denying entitlement to service connection for hypertension was not clearly and unmistakably erroneous. 38 U.S.C.A. § 5110 (West 2014); 38 C.F.R. § 3.105 (2015).

5. The December 2004 rating decision denying entitlement to service connection for diabetes mellitus was not clearly and unmistakably erroneous. 38 U.S.C.A. § 5110 (West 2014); 38 C.F.R. § 3.105 (2015).

6. The December 2004 rating decision denying entitlement to service connection for a neck condition was not clearly and unmistakably erroneous. 38 U.S.C.A. § 5110 (West 2014); 38 C.F.R. § 3.105 (2015).

7. The December 2004 rating decision denying entitlement to service connection for a back condition was not clearly and unmistakably erroneous. 38 U.S.C.A. § 5110 (West 2014); 38 C.F.R. § 3.105 (2015).

8. New and material evidence has been presented to reopen the claim of entitlement to service connection for PTSD. 38 U.S.C.A. §§ 5108 (West 2014); 38 C.F.R. § 3.156 (2015).

9. New and material evidence has been presented to reopen the claim of entitlement to service connection for hypertension. 38 U.S.C.A. §§ 5108 (West 2014); 38 C.F.R. § 3.156 (2015).

10. New and material evidence has been presented to reopen the claim of entitlement to service connection for diabetes mellitus. 38 U.S.C.A. §§ 5108 (West 2014); 38 C.F.R. § 3.156 (2015).

11. New and material evidence has been presented to reopen the claim of entitlement to service connection for a neck condition. 38 U.S.C.A. §§ 5108 (West 2014); 38 C.F.R. § 3.156 (2015).

12. New and material evidence has been presented to reopen the claim of entitlement to service connection for a back condition. 38 U.S.C.A. §§ 5108 (West 2014); 38 C.F.R. § 3.156 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duties to Notify and Assist

Under applicable law, VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2015).

With respect to the Veteran's claim regarding the timeliness of the NOD, the Veteran has been notified of the reasons for the denial of the claim, and he has been afforded the opportunity to present evidence and argument with respect to the claim. The Board finds that these actions are sufficient to satisfy any duties to notify and assist owed the Veteran. As will be explained below, the claim lacks legal merit. As the law, and not the facts, is dispositive of the claim, the duties to notify and assist imposed by the VCAA are not applicable. See Mason v. Principi, 16 Vet. App. 129, 132 (2002); see also Manning v. Principi, 16 Vet. App. 534, 542-543 (2002) (the provisions of the VCAA have no effect on an appeal where the law, and not the underlying facts or development of the facts are dispositive in a matter).

As the Board's decision to reopen the Veteran's claim of entitlement to service connection for PTSD, hypertension, diabetes mellitus, a neck condition, and a back condition is completely favorable, no further action is required to comply with the Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations.

Finally, the VCAA is not applicable to allegations of clear and unmistakable error. See Livesay v. Principi, 15 Vet. App. 165 (2001) (an attempt to obtain benefits based on an allegation of clear and unmistakable error "is fundamentally different from any other kind of action in the VA adjudicative process.").

II. Timeliness of the NOD

Under 38 U.S.C.A. § 7105(a), an appeal to the Board must be initiated by a NOD and completed by a substantive appeal (VA Form 9 or equivalent) after a statement of the case (SOC) is furnished to the claimant. See 38 C.F.R. §§ 20.200, 20.201, 20.202, 20.302.

A claimant (or his representative) must file a NOD with a determination of the RO within one year from the date that the RO mailed notice of the determination. 38 C.F.R. § 20.302(a). If a NOD is not filed within the one-year time period, the RO decision becomes final. 38 U.S.C.A. § 7105(c); 38 C.F.R. §§ 20.200, 20.201, 20.302. An untimely NOD deprives the Board of jurisdiction to consider the merits of an appeal. 38 U.S.C.A. § 7105(c).

38 U.S.C.A. § 7105(d)(3) provides that "questions as to timeliness or adequacy of response shall be determined by the Board of Veterans' Appeals." See also VAOPGCPREC 9-99, 64 Fed. Reg. 52376 (1999). The Board may implicitly or explicitly waive the issue of the timeliness of a substantive appeal. A timely filed NOD, however, is a jurisdictional bar to appellate consideration, and this issue may not be waived. See Percy v. Shinseki, 23 Vet. App. 37, 41 (2009). The Board is bound by the law and is without authority to grant an appeal on an equitable basis. See 38 U.S.C.A. §§ 503, 7104; see also Harvey v. Brown, 6 Vet. App. 416, 425 (1994).

In the present case, the RO issued a rating decision in December 2004 that denied service connection for PTSD, hypertension, diabetes mellitus, a neck condition, a low back condition, a left knee condition, hearing loss, and tinnitus. On December 15, 2004, the RO mailed to the Veteran's last address of record notice of the December 2008 rating decision. Under a bolded heading entitled "What You Should Do If You Disagree With Our Decision," the letter advised the Veteran that he had "one year from the date of this letter to appeal the decision." (emphasis in original). An attached VA Form 4107 advised the Veteran that to appeal the decision, he had to file an NOD within one year of the date of the letter of notification. Therefore, the Veteran had until December 15, 2005 to file an NOD. See 38 C.F.R. § 20.302 (a).

In March 2006, the Veteran filed a statement expressing disagreement with the December 2004 rating decision. This document, which was the earliest correspondence indicating disagreement with the December 2004 rating decision, was dated on March 10, 2006, and date-stamped as received by the RO on March 14, 2006, well beyond the one-year period provided by law for filing a NOD with the December 2004 rating decision.

The Veteran argues that he was not in receipt of the December 15, 2004, notification letter until after December 15, 2004, due to "multiple reasons for delay in delivery," including that the letter was mailed during the holiday seasons, that the RO used bulk mailing rather than priority mail, and that there was a "delay in postal delivery due to undetermined reasons." The Veteran asserts that his March 14, 2006 notice of disagreement was therefore "timely submitted within the required one year response period in accordance with regulation." See May 2006 Statement in Support of Claim. 

While the Board acknowledges that the Veteran may not have received the notification letter exactly on December 15, 2004, there is no indication from the record that the Veteran received the notification letter after the one-year period expired such that he could not have filed a timely notice of disagreement. The fact remains that the Veteran was informed that his notice of disagreement must be submitted within one year of the date of the letter. The pertinent legal authority is clear and specific, and the Board is bound by such authority. The record clearly shows that the Veteran did not file a notice of disagreement with the December 2004 rating decision within one year of the letter notifying him of such, and the Veteran does not contend otherwise. The Board is bound by the law and is without authority to grant an appeal on an equitable basis. See 38 U.S.C.A. §§ 503, 7104; see also Harvey v. Brown, 6 Vet. App. 416, 425 (1994).

In light of the foregoing, the Board finds that the Veteran did not file a timely notice of disagreement with the December 2004 rating decision denying entitlement to service connection for PTSD, hypertension, diabetes mellitus, a neck condition, a back condition, a left knee condition, hearing loss, and tinnitus. Consequently, the appeal as to the timeliness of the NOD is denied. See 38 U.S.C.A. § 7105; 38 C.F.R. §§ 20.200, 20.302.

III. CUE/New and Material Evidence

As noted above, entitlement to service connection for PTSD, hypertension, diabetes mellitus, a neck condition, and a back condition was denied by the RO in a December 2004 rating decision. The Veteran was notified of the decision and his appellate rights by a letter later that month. The Veteran did not appeal that decision, nor did he submit any new and material evidence within a year of that rating decision. The December 2004 rating decision therefore became final. See 38 U.S.C.A. § 7105(c) (West 2014); 38 C.F.R. § 20.1103.

If a claim of entitlement to service connection has been previously denied and that decision became final, the claim can be reopened and reconsidered only if new and material evidence is presented with respect to that claim. 38 U.S.C.A. § 5108; Manio v. Derwinski, 1 Vet. App. 140, 145 (1991). Such a final decision may, however, be reversed or amended where evidence establishes that it was a product of CUE and the reversal or amendment will have the same effect as if the corrected decision had been made on the same date as the reversed or amended decision. 38 U.S.C.A. § 5109A; 38 C.F.R. § 3.105(a). 

A claim of CUE is a collateral attack on an otherwise final rating decision by a VA regional office. 38 C.F.R. § 3.105(a); see also Smith v. Brown, 35 F.3d 1516, 1527 (Fed. Cir. 1994). A claim of CUE in a prior decision is "not being reopened . . . [Rather] [i]t is being revised to conform to the 'true' state of the facts or the law that existed at the time of the original adjudication." Russell v. Principi, 3 Vet. App. 310, 313 (1992) (en banc).

With regard to the issues of entitlement to service connection for PTSD, hypertension, diabetes mellitus, a neck condition, and a back condition, the Veteran has both collaterally attacked the previous rating decision denying his claims and requested that his claims be reopened on the basis of new and material evidence. (As noted in the Introduction, the Veteran has raised the same issues with respect to the issues of entitlement to service connection for a left knee condition, hearing loss, and tinnitus; however, the RO has yet to adjudicate those issues so they are not before the Board at this time.) 

The Board notes that with respect to each service connection claim, the RO adjudicated the matter of whether new and material evidence was received to reopen the claims and the matter of CUE as a single issue. See September 2006 Rating Decision. However, as they are in fact two separate claims with different laws governing them, the Board has restated the issues as set forth on the title page of this decision.


A. CUE Claims

As noted above, the Veteran argues that the rating decision of December 2004, which denied entitlement to service connection for PTSD, hypertension, diabetes mellitus, a neck condition, and a back condition, was clearly and unmistakably erroneous. 

Under 38 C.F.R. § 3.105(a), "previous determinations which are final and binding will be accepted as correct in the absence of clear and unmistakable error." 

CUE is defined as a very specific and rare kind of error. It is the kind of error, of fact or of law, that when called to the attention of later reviewers compels the conclusion, to which reasonable minds could not differ, that the result would have been manifestly different but for the error. Fugo v. Brown, 6 Vet. App. 40 (1993).

In determining whether a prior determination involves CUE, the Court has established a three-prong test. The three prongs are: (1) either the correct facts, as they were known at the time, were not before the adjudicator (i.e., there must be more than simple disagreement on how the facts were weighed or evaluated), or the statutory/regulatory provisions extant at that time were not correctly applied; (2) the error must be "undebatable" and of the sort which, if it had not been made, would have manifestly changed the outcome at the time it was made; and (3) a determination that there was CUE must be based on the record and law that existed at the time of the adjudication in question. Damrel v. Brown, 6 Vet. App. 242, 245 (1994) (citing Russell v. Principi, 3 Vet. App. 310, 313-14 (1992) (en banc)).

There is a presumption of validity that attaches to a final decision, and when such a decision is collaterally attacked the presumption becomes even stronger. Fugo v. Brown, 6 Vet. App. 40, 43-44 (1993). Therefore, a claimant who seeks to obtain retroactive benefits based on CUE has a much heavier burden than that placed on a claimant who seeks to establish prospective entitlement to VA benefits. Akins v. Derwinski, 1 Vet. App. 228, 231 (1991). In determining whether there is clear and unmistakable error, the doctrine of reasonable doubt in favor of the Veteran under 38 U.S.C.A. § 5107(b) is not for application, inasmuch as error, if it exists, is undebatable, or there was no error within the meaning of 38 C.F.R. § 3.105(a). Id. Additionally, "even where the premise of error is accepted, if it is not absolutely clear that a different result would have ensued, the error complained of cannot be, ipso facto, clear and unmistakable." Fugo, 6 Vet. App. at 43-44. 

Moreover, VA's breach of a duty to assist cannot form the basis for a claim of CUE. Baldwin v. West, 13 Vet. App. 1, 5 (1999); Caffrey v. Brown, 6 Vet. App. 377 (1994). Simply to allege CUE on the basis that previous adjudications improperly weighed and evaluated the evidence, or failed to apply the benefit-of-the-doubt doctrine, or failed to give reasons and bases, can never rise to the stringent definition of CUE. "Broad-brush" allegations of "failure to follow the regulations" or "failure to give due process" are also insufficient. Fugo v. Brown, 6 Vet. App. 40, 44 (1993). 

CUE motions must be reviewed on the basis of the law and regulations in effect at the time the rating decisions in question were issued. Damrel v. Brown, 6 Vet. App. 242, 245 (1994) (citing Russell v. Principi, 3 Vet. App. 310, 313- 14 (1992) (en banc)). The general requirements for entitlement to service connection were the same in 2004 as they are today.

Service connection will be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303. Establishing service connection generally requires evidence of (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the present disability. See Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). In the absence of proof of a present disability there can be no valid claim. Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992).

1. PTSD

The Veteran filed a claim of entitlement to service connection for PTSD in December 2003. He alleged that his PTSD started in 1971 and that his first treatment for PTSD was through the VA in December 2003.

The evidence on file at the time of the December 2004 rating decision included the Veteran's service treatment records, a VA PTSD Assessment Summary from December 2003, private treatment records from April 1995 to August 1995 detailing treatment for a neck condition, and the Veteran's personnel records.

Service treatment records are silent for any treatment for or diagnoses of psychiatric disorders.

Personnel records show that the Veteran served aboard the USS Shangri-La in the contiguous waters of Vietnam from April 1970 to November 1970 and that he was awarded the Vietnam Service Medal with one bronze star, the Republic of Vietnam Campaign Medal, and the National Defense Service Medal. 

A December 2003 VA treatment record shows a diagnosis of PTSD based on the Veteran's reports of handling of bombs destined for South Vietnam and witnessing fellow sailors being killed or injured on his ship. The VA treatment provider also opined that the Veteran's "symptoms are a direct result of his duties in service to this country during time of war." 

The laws and regulations in effect at the time of the December 2004 rating decision provided that service connection for PTSD required (1) a medical diagnosis of PTSD in accordance with 38 C.F.R. § 4.125(a); (2) a link, established by medical evidence, between current symptoms and an in-service stressor; and (3) credible supporting evidence that the claimed in-service stressor occurred. 38 C.F.R. § 3.304(f) (2002).

The evidence necessary to establish the occurrence of a recognizable stressor during service to support a diagnosis of PTSD varied depending upon whether the veteran engaged in "combat with the enemy." See 38 U.S.C.A. § 1154(b); 38 C.F.R. § 3.304(f); Zarycki v. Brown, 6 Vet. App. 91, 98 (1993). Participation in combat, a determination that was to be made on a case by case basis, required that the veteran have personally participated in events constituting an actual fight or encounter with a military foe or hostile unit or instrumentality. See VAOPGCPREC 12-99 (October 18, 1999). If VA determined the veteran engaged in combat with the enemy and his alleged stressor is combat-related, then his lay testimony or statement was accepted as conclusive evidence of the stressor's occurrence and no further development or corroborative evidence was required - provided that such testimony was found to be "satisfactory," i.e., credible and "consistent with circumstances, conditions or hardships of service." See 38 U.S.C.A. § 1154(b); 38 C.F.R. § 3.304(f); Zarycki, 6 Vet. App. at 98. If, however, VA determined either that the veteran did not engage in combat with the enemy or that he did engage in combat, but that the alleged stressor is not combat related, then his lay testimony, in and of itself, was not sufficient to establish the occurrence of the alleged stressor. Instead, the record had to contain evidence that corroborated his testimony or statements. See Zarycki, 6 Vet. App. at 98.

The December 2004 rating decision denied entitlement to service connection for PTSD. The RO found that there was no evidence that an in-service stressor occurred which was so significant as to produce PTSD symptoms. The RO noted that evidence of receipt of a combat related decoration or medal will generally suffice to show that such an incident occurred; however, the RO noted that there was no evidence that the Veteran received a combat related medal. The RO also noted that the Veteran failed to respond to its letter requesting details surrounding the stressful events in service. Thus, the RO concluded that the existence of an in-service stressor could not be conceded based on the evidence of record. The RO also determined that the December 2003 VA PTSD diagnosis and nexus opinion lacked probative value because it was based on the unsubstantiated subjective history provided by the Veteran, rather than on the objective evidence of record. 

The Veteran argues that denial of service connection for PTSD was clearly and unmistakably erroneous because the RO failed to consider his decorations and medals as proof of combat service and because the RO failed to accept the December 2003 PTSD diagnosis and opinion.

The Board cannot find that it was clear and unmistakable error for the RO to determine that a stressor had not been shown upon the record before the RO in December 2004. The rating decision specifically noted that the Veteran's personnel records did not show the receipt of a combat-related medal, and the Veteran's contention that his service medals were combat-related medals amounts to no more than a disagreement as to how this evidence was viewed by the RO. 

Turning to the Veteran's second argument, that the RO should have granted his claim based on the December 2003 treatment records diagnosing PTSD related to service, the Board finds that the Veteran's contention in this regard amounts to a claim that medical evidence at the time of the RO's decision establishes that his PTSD was due to service. He is, in essence, arguing that the RO failed to give proper weight to certain evidence, which, if weighed or considered differently, would have resulted in an award of service connection. The crux of the Veteran's claim is that the RO failed to assign sufficient weight to the 2003 diagnosis of PTSD by the VA treatment provider, who linked the diagnosis to the Veteran's claimed in-service stressors.

Based on a review of the record, the Board finds the RO correctly applied the relevant laws and regulations in existence at the time of the December 2004 rating decision. Based on the evidence of record in December 2004, the RO concluded that an in-service stressor could not be verified or conceded and that the medical evidence of record did not show that a diagnosis of PTSD was appropriate. The rating decision's list of the relevant evidence considered therein included the VA treatment record containing the PTSD diagnosis, as well as the Veteran's complete service personnel records. Thus, the correct facts were before the adjudicator.

The RO's conclusions do not amount to legal error. The Veteran was informed of the decision and provided his appeal rights. To the extent that he may presently disagree with how the facts were weighed or evaluated by the RO in reaching its decision in December 2004, the Board notes that such disagreement alone is insufficient to constitute CUE. Russell, 3 Vet. App. at 310; Fugo, 6 Vet. App. at 40. 

Thus, the Board finds that the December 2004 rating decision denying entitlement to service connection for PTSD was reasonably supported by the evidence of record, correctly applied and considered prevailing legal authority, and was not undebatably erroneous. Furthermore, the RO, in December 2004, had before it the correct facts as they were known at the time, and any alleged breach of the duty to assist cannot constitute CUE. The Board finds that the RO decision was a plausible application of the extant legal provisions to the correct facts. The decision does not demonstrate error, such that reasonable minds cannot differ that a change in outcome is required. Therefore, the Veteran's request for revision of the December 2004 rating decision denying entitlement to service connection for PTSD rating decision based on CUE must be denied.

2. Hypertension

The Veteran filed a claim of entitlement to service connection for hypertension in December 2003. He alleged that high blood pressure started in 1973 and that he has been treated for high blood pressure since 1973. 

The evidence on file at the time of the December 2004 rating decision included the Veteran's service treatment records, a VA PTSD Assessment Summary from December 2003, private treatment records from April 1995 to August 1995 detailing treatment for a neck condition, and the Veteran's personnel records.

Service treatment records show that the Veteran reported a history of high blood pressure on his May 1969 enlistment Report of Medical History. The Veteran's blood pressure was subsequently check on May 13 (120/68), May 14 (170/92 and 136/84), May 15 (132/84, 170/94, and 178/90), and May 23 (132/82). The Veteran's enlistment examination notes a blood pressure reading of 120/68, and "hypertension-mild" is noted in the summary of defects and diagnoses. An October 1969 service treatment record shows a blood pressure reading of 126/90. During a February 1971 separation examination, the Veteran's blood pressure reading was 130/90, and no history of or treatment for hypertension was noted. 

Private treatment records dated in May 1995 and received by the RO in January 2004 show a notation that the Veteran's "[p]ast medical history is significant for hypertension." 

The December 2003 VA PTSD assessment also noted a medical history of hypertension. 

The December 2004 rating decision denied entitlement to service connection for hypertension because the evidence did not show a current diagnosis of hypertension and because service treatment records showed no treatment for or diagnoses of hypertension. The RO noted that the Veteran's blood pressure reading at discharge was 130/90.

The Veteran argues that denial of service connection for hypertension was clearly and unmistakably erroneous because his February 1971 separation examination showed a blood pressure reading of 130/90, which meets the American Heart Association's definition of borderline hypertension. 

As noted above, the very evidence identified by the Veteran in his motion was in fact considered by the RO in the December 2004 decision. Any argument that the evidence of record at the time of the December 2004 decision supported a finding that the Veteran's claimed hypertension had its onset during service is no more than a disagreement as to how the evidence was viewed by the RO. This is not a case where the RO did not have the facts before it; it is a disagreement with how the RO viewed the facts. Such an argument cannot constitute clear and unmistakable error.

In sum, the Board finds that the correct facts, as known at the time of December 2004 rating decision, were before the RO, and that the law extant at that time was correctly applied. Accordingly, there was no CUE in the December 2004 rating decision denying entitlement to service connection for hypertension.

3. Diabetes Mellitus

The Veteran filed a claim of entitlement to service connection for diabetes in December 2003. He alleged that he had been "borderline diabetic" since 2001.

The evidence on file at the time of the December 2004 rating decision included the Veteran's service treatment records, a VA PTSD Assessment Summary from December 2003, private treatment records from April 1995 to August 1995 detailing treatment for a neck condition, and the Veteran's personnel records.

Service treatment records are negative for treatment for or diagnoses of diabetes during military service. The VA and private treatment records do not show treatment for or diagnoses of diabetes. 

Personnel records show that the Veteran served aboard the USS Shangri-La in the contiguous waters of Vietnam from April 1970 to November 1970 and that he was awarded the Vietnam Service Medal with one bronze star, the Republic of Vietnam Campaign Medal, and the National Defense Service Medal. 

The laws and regulations at the time of the December 2004 rating decision provided that if a Veteran was exposed to an herbicide agent during active military, naval, or air service, the following diseases shall be service connected if the requirements of 38 U.S.C.A. § 1116 ; 38 C.F.R. § 3.307(a)(6)(iii) are met, even though there is no record of such disease during service, provided further that the rebuttable presumption provisions of 38 U.S.C.A. § 1113 ; 38 C.F.R. § 3.307(d) are also satisfied: chloracne or other acneform diseases consistent with chloracne, Type 2 diabetes mellitus, Hodgkin's disease, chronic lymphocytic leukemia, multiple myeloma, non-Hodgkin's lymphoma, acute and subacute peripheral neuropathy, porphyria cutanea tarda, prostate cancer, respiratory cancers (cancer of the lung, bronchus, larynx, or trachea), and soft-tissue sarcomas (other than osteosarcoma, chondrosarcoma, Kaposi's sarcoma, or mesothelioma). 38 C.F.R. § 3.309(e) (2003). 

The laws and regulations at that time also provided that a Veteran who, during active military, naval, or air service, served in the Republic of Vietnam during the period beginning on January 9, 1962 and ending on May 7, 1975, shall be presumed to have been exposed during such service to an herbicide agent, unless there is affirmative evidence to establish that the Veteran was not exposed to any such agent during that service. 38 C.F.R. § 3.307(a)(6)(iii) (2002). "Service in the Republic of Vietnam" includes service in the waters offshore and service in other locations if the conditions of service involved duty or visitation in the Republic of Vietnam. Id. 

The December 2004 rating decision denied entitlement to service connection for diabetes. The RO determined that that there was no evidence of a diagnosis of type II diabetes mellitus. The RO also found that even if a diagnosis was shown, there was no evidence that diabetes was directly related to service and that there was no evidence of exposure to herbicides such that presumptive service-connection would be warranted. The RO also noted that the Veteran failed to respond to its letter requesting details surrounding his exposure to herbicides.

The Veteran alleges that the RO committed CUE in the December 2004 rating decision in determining that he was not exposed to Agent Orange while serving on the USS Shangri-La. Specifically, the Veteran asserts that his DD-214 and other personnel records, which show that he received the Vietnam Service Medal and Republic of Vietnam Campaign Medal for service aboard the USS Shangri-La in the contiguous waters of Vietnam, constitute evidence that he served in Vietnam such that presumptive service connection for diabetes is warranted. 

The Board cannot find that it was clear and unmistakable error for the RO to determine that service in Vietnam had not been shown upon the record before the RO in December 2004. The rating decision specifically noted that the Veteran's personnel records did not show evidence of exposure to Agent Orange, and the Veteran's contention that his service medals demonstrate service in Vietnam amounts to no more than a disagreement as to how the evidence was viewed by the RO. 

This is not a case where the RO did not have the facts before it; it is a disagreement with how the RO viewed the facts. Such an argument cannot constitute clear and unmistakable error.

In sum, the Board finds that the correct facts, as known at the time of December 2004 rating decision, were before the RO, and that the law extant at that time was correctly applied. Accordingly, there was no CUE in the December 2004 rating decision denying entitlement to service connection for diabetes.

4. Neck and Back Conditions

The Veteran filed a claim of entitlement to service connection for neck and back conditions December 2003. He alleged that he had suffered from neck and back conditions since 1977.

The evidence on file at the time of the December 2004 rating decision included the Veteran's service treatment records, a VA PTSD Assessment Summary from December 2003, private treatment records from April 1995 to August 1995 detailing treatment for a neck condition, and the Veteran's personnel records.

Service treatment records are negative for treatment for or diagnoses of a neck or a back condition during military service. The private treatment records show treatment for neck pain in April 1995. The Veteran reported neck pain over the last month without obvious precipitating cause. It was noted in the past medical history section of the treatment record that the Veteran underwent lumbar surgery in 1981. In May 1995, the Veteran underwent surgery for cervical disc herniation. An August 1995 private treatment record shows complaints of low back pain. 

The December 2004 rating decision denied entitlement to service connection for a neck condition and a back condition. The RO found that service treatment records were negative for any cervical or lumbar spine conditions and noted that the February 1971 discharge examination failed to note any spine abnormalities. The RO acknowledged that private treatment records showed treatment for a cervical spine condition in 1995 and suggested treatment for a lumbar spine condition in 1981, but concluded that the records failed to establish any relationship between those conditions and service. 

The Veteran asserts that the December 2004 rating decision was erroneous because (1) the RO failed to indicate in the Evidence portion of its decision what service medical records were viewed in determining that the Veteran's spine was negative for spine abnormalities on discharge; (2) the RO failed to comply with the duty to notify and assist in that the RO did not notify him of the inability to obtain relevant records; and (3) the RO did not consider that the Veteran continuously lifted artillery shells during service, which could have resulted in his spine conditions.

To the extent that the Veteran contends that the RO violated a duty to assist or to give reasons and bases, such an allegation cannot form the basis for a claim of CUE. Baldwin v. West, 13 Vet. App. 1, 5 (1999); Caffrey v. Brown, 6 Vet. App. 377 (1994)

Based on a review of the record, the Board finds the RO correctly applied the relevant laws and regulations in existence at the time of the December 2004 rating decision. Based on the evidence of record in December 2004, the RO concluded there was no evidence demonstrating a nexus between the Veteran's current conditions and his military service. The rating decision's list of the relevant evidence considered therein included the Veteran's service treatment records and private treatment records. Thus, the correct facts were before the adjudicator.

The RO's conclusions do not amount to legal error. The Veteran was informed of the decision and provided his appeal rights. To the extent that he may presently disagree with how the facts were weighed or evaluated by the RO in reaching its decision in December 2004, the Board notes that such disagreement alone is insufficient to constitute CUE. Russell, 3 Vet. App. at 310; Fugo, 6 Vet. App. at 40. 

Thus, the Board finds that the December 2004 rating decision denying entitlement to service connection for a neck condition and a back condition was reasonably supported by the evidence of record, correctly applied and considered prevailing legal authority, and was not undebatably erroneous. Furthermore, the RO, in December 2004, had before it the correct facts as they were known at the time, and any alleged breach of the duty to assist cannot constitute CUE. The Board finds that the RO decision was a plausible application of the extant legal provisions to the correct facts. The decision does not demonstrate error, such that reasonable minds cannot differ that a change in outcome is required. Therefore, the Veteran's request for revision of the December 2004 rating decision denying entitlement to service connection for a neck condition and a back condition based on CUE must be denied.

B. New and Material Evidence

Having determined that the December 2004 rating decision that denied entitlement to service connection for PTSD, hypertension, diabetes mellitus, a neck condition, and a back condition was not clearly and unmistakably erroneous, the Board now turns to the question of whether new and material evidence has been presented sufficient to reopen the Veteran's claims. 

New evidence means existing evidence not previously submitted to agency decision-makers. Material evidence means existing evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence of record at the time of the last prior final denial of the claim sought to be reopened, and must raise a reasonable possibility of substantiating the claim. 38 C.F.R. § 3.156(a) (2015). 

VA must review all of the evidence submitted since the last final rating decision in order to determine whether the claim may be reopened. See Hickson v. West, 12 Vet. App. 247, 251 (1999). The credibility of the evidence is presumed for the purpose of reopening, unless it is inherently false or untrue or, if it is in the nature of a statement or other assertion, it is beyond the competence of the person making the assertion. Duran v. Brown, 7 Vet. App. 216 (1995); Justus v. Principi, 3 Vet. App. 510 (1992). The threshold for determining whether new and material evidence raises a reasonable possibility of substantiating a claim is "low." Shade v. Shinseki, 24 Vet. App. 110, 117 (2010). Furthermore, in determining whether this low threshold is met, VA should not limit its consideration to whether the newly submitted evidence relates specifically to the reason why the claim was last denied, but instead should ask whether the evidence could reasonably substantiate the claim were the claim to be reopened, either by triggering the Secretary's duty to assist or through consideration of an alternative theory of entitlement. Id. at 118. With respect to the issue of materiality, the newly presented evidence need not be probative of all the elements required to award the service connection claim. In Hodge v. West, 155 F.3d 1356, 1363 (Fed. Cir. 1998), the Federal Circuit noted that new evidence could be sufficient to reopen a claim if it could contribute to a more complete picture of the circumstances surrounding the origin of a Veteran's injury or disability, even where it would not be enough to convince the Board to grant a claim.

1. PTSD

As noted above, relevant evidence of record at the time of the RO's last final rating decision in December 2004 included the Veteran's service treatment records, a VA PTSD Assessment Summary from December 2003, and the Veteran's personnel records. Based on this evidence, the RO determined that a valid diagnosis of PTSD based on a verified in-service stressor had not been shown. Thus, the claim was denied.

Relevant additional evidence received since the RO's December 2004 rating decision includes the Veteran's lay statements detailing the in-service stressors he believes support a diagnosis of PTSD. See, e.g., May 2006 VA Form 21-0781 (Statement in Support of Claim for Service Connection for Post-Traumatic Stress Disorder). This evidence was not previously on file at the time of the RO's December 2004 decision; thus, it is new. Furthermore, this evidence is material because it bears directly on the missing element of an in-service stressor, which is one of the reasons that the claim was previously denied. Specifically, the claim was initially denied, in part, because the Veteran did not submit specific details surrounding stressful events in service such that an in-service stressor could be corroborated or conceded. The newly received evidence consists of the Veteran's lay statements providing those details. Moreover, the new evidence contributes to a more complete picture of the circumstances surrounding the origin of the Veteran's alleged disability, even where it would not be enough to convince the Board to grant a claim. See Hodge v. West, 155 F.3d 1356, 1363 (Fed. Cir. 1998). Thus, the new evidence relates to an unestablished fact necessary to substantiate a claim of entitlement to service connection for PTSD, and it raises a reasonable possibility of substantiating the claim, particularly when considering the low threshold for reopening a claim set forth in Shade. See Shade v. Shinseki, 24 Vet. App. 110 (2010). Accordingly, the claim of entitlement to service connection for PTSD is reopened. See 38 U.S.C.A. § 5108; 38 C.F.R. § 3.156(a).

2. Hypertension

As noted above, relevant evidence of record at the time of the RO's last final rating decision in December 2004 included Veteran's service treatment records, a VA PTSD Assessment Summary from December 2003 that noted a medical history of hypertension, and private treatment records from May 1995 noting a past history of hypertension. Based on this evidence, the RO denied entitlement to service connection for hypertension because the evidence did not show a current diagnosis of hypertension and because service treatment records showed no treatment for or diagnoses of hypertension.

Relevant additional evidence received since the RO's December 2004 rating decision includes a private treatment record from August 2010 showing that the Veteran was scheduled for eye surgery and the Veteran's assertions that his hypertension is secondary to PTSD and/or diabetes. This evidence was not previously on file at the time of the RO's December 2004 decision; thus, it is new. Furthermore, although the newly submitted evidence does not relate specifically to the reason why the claim was last denied, the incomplete private treatment records trigger the Secretary's duty to assist and the Veteran's lay statements raise an alternative theory of entitlement. See Shade v. Shinseki, 24 Vet. App., at 118. Thus, the new evidence is material, particularly when considering the low threshold for reopening a claim set forth in Shade. Id. Accordingly, the claim of entitlement to service connection for hypertension is reopened. See 38 U.S.C.A. § 5108; 38 C.F.R. § 3.156(a).

3. Diabetes

As noted above, the evidence on file at the time of the December 2004 rating decision included the Veteran's service treatment records and the Veteran's personnel records, showing that the Veteran served aboard the USS Shangri-La in the contiguous waters of Vietnam from April 1970 to November 1970 and that he was awarded the Vietnam Service Medal with one bronze star, the Republic of Vietnam Campaign Medal, and the National Defense Service Medal. Based on this evidence, the RO denied entitlement to service connection for diabetes because the evidence did not show a current diagnosis of diabetes and because there was no evidence that diabetes was related to service, to include exposure to herbicides. The RO also noted that the Veteran failed to respond to its letter requesting details surrounding his exposure to herbicides.

Relevant additional evidence received since the RO's December 2004 rating decision includes the Veteran's lay statements regarding his duties while serving aboard the USS Shangri-La and treatise evidence regarding the USS Shangri-La's activities during the Vietnam War. The evidence also consists of the Veteran's allegations regarding handling other chemicals, such as oils and jet engine fumes, which he contends caused his diabetes. See, e.g. April 2009 Statement in Support of Claim; May 2006 Statement in Support of Claim. This evidence was not previously on file at the time of the RO's December 2004 decision; thus, it is new. Furthermore, because it addresses whether the Veteran was exposed to herbicides and other chemicals, the new evidence pertains to unestablished facts necessary to substantiate the claim of service connection. Accordingly, particularly in light of the "low threshold" standard endorsed by the Court in Shade v. Shinseki, 24 Vet. App. 110 (2010), the Board finds that new and material evidence has been submitted to reopen the claim for service connection for diabetes. Accordingly, the claim of entitlement to service connection for diabetes is reopened. See 38 U.S.C.A. § 5108; 38 C.F.R. § 3.156(a).

4. Neck and Back Conditions

As noted above, the evidence on file at the time of the December 2004 rating decision included the Veteran's service treatment records and private treatment records from April 1995 to August 1995 detailing treatment for a neck condition and complaints of low back pain. Based on this evidence, the RO denied entitlement to service connection for a neck condition and a back condition because the evidence did not show current diagnoses of neck and back conditions that were related to any event in service. 

Relevant additional evidence received since the RO's December 2004 rating decision includes the Veteran's lay statements that he injured his neck and back in service while lifting explosive ordnance that weighed up to 2000 pounds. See, e.g., September 2006 Statement in Support of Claim; May 2006 Statement in Support of Claim. This evidence was not previously on file at the time of the RO's December 2004 rating decision; thus, it is new. Furthermore, this evidence is material because it relates to the unestablished fact of whether neck and back conditions were incurred in service. See 38 C.F.R. § 3.156(a). Specifically, the Veteran's claim was previously denied, in part, on the basis that there was no evidence that a neck or back condition was related to an in-service injury, disease, or event. The newly submitted lay statements address in-service injuries to the neck and back. These statements are presumed credible for the purposes of evaluating the Veteran's request to reopen his claim for service connection for neck and back conditions. Justus, supra. 

Accordingly, and particularly in light of the "low threshold" standard endorsed by the Court in Shade v. Shinseki, 24 Vet. App. 110 (2010), the Board finds that new and material evidence has been submitted to reopen the claim for service connection for a neck condition and a back condition.


ORDER

A March 2006 notice of disagreement was not timely to appeal a December 2004 rating decision that denied entitlement to service connection for PTSD, hypertension, diabetes mellitus, a neck condition, a low back condition, a left knee condition, hearing loss, and tinnitus. 

Inasmuch as there was no clear and unmistakable error in a rating decision of December 2004 that denied service connection for posttraumatic stress disorder, the request to revise that decision is denied.

Inasmuch as there was no clear and unmistakable error in a rating decision of December 2004 that denied service connection for hypertension, the request to revise that decision is denied.

Inasmuch as there was no clear and unmistakable error in a rating decision of December 2004 that denied service connection for diabetes, the request to revise that decision is denied.

Inasmuch as there was no clear and unmistakable error in a rating decision of December 2004 that denied service connection for status post cervical discectomy with C5-6 fusion, the request to revise that decision is denied.

Inasmuch as there was no clear and unmistakable error in a rating decision of December 2004 that denied service connection for status post lumbar discectomy, the request to revise that decision is denied.

New and material evidence having been presented, the claim of service connection for PTSD is reopened, and to this extent only, the appeal of this issue is granted.

New and material evidence having been presented, the claim of service connection for hypertension is reopened, and to this extent only, the appeal of this issue is granted.

New and material evidence having been presented, the claim of service connection for diabetes is reopened, and to this extent only, the appeal of this issue is granted.

New and material evidence having been presented, the claim of service connection for post cervical discectomy with C5-6 fusion is reopened, and to this extent only, the appeal of this issue is granted.

New and material evidence having been presented, the claim of service connection for status post lumbar discectomy is reopened, and to this extent only, the appeal of this issue is granted.


REMAND

After a thorough review of the Veteran's claims file, the Board has determined that additional evidentiary development is necessary prior to the adjudication of the remaining issues on appeal.

Remand is necessary for the reopened claims so that the RO will have an opportunity to readjudicate these claims on the merits in the first instance. See Hickson v. Shinseki, 23 Vet. App. 394 (2010); Bernard v. Brown, 4 Vet. App. 384 (1993).

Regarding all of the issues on appeal, remand is required to obtain any outstanding medical evidence. The AOJ has not attempted to obtain any VA or private treatment records since the Veteran's claims were initially adjudicated in 2004. Although it is not entirely clear whether the Veteran has received any additional VA or private treatment for the disabilities on appeal, the Board notes that there is currently no evidence reflecting that the Veteran has been diagnosed with hypertension, diabetes, a neck condition, a low back condition, or peripheral neuropathy. Accordingly, the Board finds that the Veteran should be given one more opportunity to identify or submit any pertinent evidence regarding the issues on appeal. 

Regarding the claim of entitlement to service connection for an acquired psychiatric disorder, remand is required to provide the Veteran with a VA examination.

VA's duty to assist includes providing a medical examination and obtaining an opinion when it is necessary to make a decision on a claim. 38 U.S.C.A. § 5103A(d); 38 C.F.R. § 3.159. Such development is necessary if the information and evidence of record does not contain sufficient competent medical evidence to decide the claim, but (1) contains competent evidence of diagnosed disability or symptoms of disability, (2) establishes that the Veteran suffered an event, injury or disease in service, or has a presumptive disease during the pertinent presumptive period, and (3) indicates that the claimed disability may be associated with the in-service event, injury, or disease, or with another service-connected disability. 38 C.F.R. § 3.159(c)(4); McLendon v. Nicholson, 20 Vet. App. 79, 83-86 (2006). The threshold for finding a link between current disability and service so as to require medical examination is low. Locklear v. Nicholson, 20 Vet. App. 410 (2006); McLendon, 20 Vet. App. at 83.

In the present case, the Veteran was diagnosed with PTSD by a VA social worker in December 2003. Since that time, the Veteran has continued to report PTSD symptoms. See Veteran's statements dated in January 2016 and March 2006. Thus, the first McLendon element is satisfied. 

Regarding an in-service incurrence of this disorder, during the course of the appeal, the regulations governing PTSD were amended effective July 13, 2010. See 75 Fed. Reg. 39843 -52 (July 13, 2010) (codified at 38 C.F.R. 3.304(f)(3)). The amendment eliminates the requirement for corroboration of the claimed in-service stressor if the claimed stressor is related to the Veteran's fear of hostile military or terrorist activity and a VA psychiatrist or psychologist, or a psychiatrist or psychologist with whom VA has contracted, confirms that the claimed stressor is adequate to support a diagnosis of PTSD and that the Veteran's symptoms are related to the claimed stressor, provided that the claimed stressor is consistent with the places, types, and circumstances of the Veteran's service. Id. 

Here, the Veteran has reported, albeit vaguely, PTSD stressors of witnessing injuries and deaths of his fellow soldiers. See May 2006 Statement in Support of Claim; December 2003 VA Treatment Record. The Veteran's personnel records and other treatise evidence document that he was stationed in the Gulf of Tonkin during the Vietnam War and that his ship launched combat sorties for seven months. Thus, his stressors are arguably consistent with the places, types, and circumstances of his service.

The Board notes that, to date, the Veteran has never been afforded a VA psychiatric examination and medical opinion for this claim. Since the claims file contains lay and medical evidence of a current disorder, in-service incurrences, and an indication that the disorder may be related to service, to include fear of hostile military activity, the Board finds that a remand is required in order to afford the Veteran a VA examination to determine the nature and etiology of the acquired psychiatric disorder currently on appeal. McClendon, 20 Vet. App. at 86.

Additionally, the Veteran has not been provided with notice regarding establishing service connection for PTSD under the revised regulations. See 38 C.F.R. § 3.304(f), effective on and after July 13, 2010. On remand, this should be remedied. See 38 U.S.C.A. § 5103(a). 

Regarding the claims for entitlement to service connection for hypertension, diabetes, a neck condition, a low back condition, and peripheral neuropathy, the Board finds that the evidence, at this juncture, does not necessitate the provision of VA examinations. Specifically, as noted above, there is currently no evidence showing that the Veteran has current diagnoses of these disabilities. However, as potentially pertinent treatment records may be added to the record, additional evidence may yet be provided which meets the McLendon threshold.

The Board also notes that the Veteran has raised the issue of entitlement to service connection for peripheral neuropathy as secondary to a neck and/or low back condition. See August 2011 Notice of Disagreement. Similarly, in several statements, the Veteran raised the issue of entitlement to service connection for hypertension as secondary to PTSD and/or diabetes. See, e.g., June 2009 Statement in Lieu of VA Form 9; September 2006 Statement in Support of Claim. VA has a duty to address all arguments put forth by a claimant and/or theories under which entitlement to benefits sought may be awarded. See generally Schroeder v. West, 212 F.3d 1265 (Fed. Cir. 2000); Buckley v. West, 12 Vet. App. 76, 83 (1998). There may be multiple theories or means of establishing entitlement to a benefit for a disability, and if the theories all pertain to the same benefit for the same disability, they constitute the same claim. Roebuck v. Nicholson, 20 Vet. App. 307, 313 (2006). Accordingly, VA "must investigate the reasonably apparent and potential causes of [a claimant's] condition and theories of service connection that are reasonably raised by the record or raised by a sympathetic reading of the claimant's filings." DeLisio v. Shinseki, 25 Vet. App. 45, 53-54 (2011). 

With regard to the issues of service connection for peripheral neuropathy and hypertension on a secondary basis, the Board notes that the Veteran has not yet been provided with secondary service connection VCAA notice. Additionally, the issues of entitlement to service connection for peripheral neuropathy and hypertension on a secondary basis are inextricably intertwined with the issues of entitlement to service connection for PTSD, diabetes, a neck condition, and a low back condition and are deferred pending the development requested herein. See Harris v. Derwinski, 1 Vet. App. 180, 183 (1991).

Accordingly, the case is REMANDED for the following action:

1. Provide the Veteran with appropriate notice, pursuant to the VCAA under 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b), that includes the requirements for establishing secondary service connection pursuant to 38 C.F.R. § 3.310, for his claim for service connection for hypertension and peripheral neuropathy, as well as an explanation as to what information or evidence is needed to substantiate a claim for entitlement to service connection for an acquired psychiatric disorder, to include PTSD. In particular, notify the Veteran of the requirements for establishing service connection for PTSD under the revised regulations. See 38 C.F.R. § 3.304(f).

2. Obtain and associate with the Veteran's claims file any outstanding VA treatment records documenting treatment for the conditions on appeal dated from December 2003 to the present. If no such records are available, clearly document the claims file to that effect. 

Additionally, request that the Veteran provide the names, addresses, and approximate dates of treatment of all medical care providers who have treated him for the issues on appeal. After the Veteran has signed the appropriate releases, those records not already on file should be obtained and associated with the claims folder. All attempts to locate these records must be documented in the claims folder. All records obtained pursuant to this request must be included in the Veteran's claims file. If the search for such records has negative results, documentation to that effect should be included in the claims file in accordance with 38 C.F.R. § 3.159(c)(1).

3. After all available records have been associated with the claims file, schedule the Veteran for a VA psychiatric examination for the purpose of ascertaining the nature and etiology of any and all acquired psychiatric disorders diagnosed proximate to, or during the pendency of, this appeal. 

The entire claims file and a copy of this Remand must be made available to the examiner and the examiner shall indicate in the report that the claims file was reviewed. Any tests or studies deemed necessary should be conducted, and the results should be reported in detail.

After examining the Veteran and reviewing the claims file, the examiner should provide an opinion as to the diagnosis of any acquired psychiatric disorders found to be present.

If a diagnosis of PTSD is appropriate, the examiner should state whether: (1) each claimed stressor was sufficient to produce PTSD based on a "fear of hostile military or terrorist activity" during service; (2) each diagnostic criterion to support the diagnosis of PTSD has been satisfied; and (3) there is a link between the current symptomatology and one or more of the in-service stressors sufficient to produce PTSD. For purposes of this paragraph, "fear of hostile military or terrorist activity" means that a Veteran experienced, witnessed, or was confronted with an event or circumstance that involved actual or threatened death or serious injury, or a threat to the physical integrity of the Veteran or others, such as from an actual or potential improvised explosive device; vehicle-imbedded explosive device; incoming artillery, rocket, or mortar fire; grenade; small arms fire, including suspected sniper fire; or attack upon friendly military aircraft, and the Veteran's response to the event or circumstance involved a psychological or psycho-physiological state of fear, helplessness, or horror. See 38 C.F.R. § 3.304(f)(3). In offering these opinions, the examiner must acknowledge and discuss the Veteran's reports of guilt over handling bombs destined for South Vietnam and witnessing the deaths and injuries of fellow sailors. 

With respect to each acquired psychiatric disorder other than PTSD found to be present and/or diagnosed proximate to or during the pendency of the appeal, the examiner should offer an opinion as to whether it is at least as likely as not (50 percent or greater probability) that the disorder was incurred in, caused by, or is otherwise related to, the Veteran's military service. In offering this opinion, the examiner must acknowledge and discuss the Veteran's reports of guilt over handling bombs destined for South Vietnam and witnessing the deaths and injuries of fellow sailors. 

In providing these diagnoses and opinions, the examiner should specifically review and comment on the December 2003 VA PTSD assessment. If necessary, and to the extent possible, the examiner should reconcile his opinion with this report. 

A report of the examination should be prepared and associated with the Veteran's VA claims file. A complete rationale must be provided for all opinions rendered. If the examiner cannot provide the requested opinions without resorting to speculation, he/she should expressly indicate this and provide a supporting rationale as to why an opinion cannot be made without resorting to speculation.

4. Thereafter, the RO/AMC must review the claims file to ensure that the foregoing requested development has been completed. In particular, review the requested medical opinions to ensure that they are responsive to and in compliance with the directives of this remand and, if not, implement corrective procedures. See Stegall v. West, 11 Vet. App. 268 (1998).

5. After completing the above, conduct any additional development deemed necessary, to potentially include VA examinations regarding the Veteran's claimed hypertension, diabetes, neck condition, low back condition, and peripheral neuropathy. Thereafter, readjudicate the Veteran's claims in light of all evidence of record, including all additional evidence received. If the benefits sought on appeal are not granted, the Veteran and his representative should be furnished with a supplemental statement of the case and afforded an opportunity to respond before the file is returned to the Board for further appellate consideration.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
WAYNE M. BRAEUER
Veterans Law Judge, Board of Veterans' Appeals




Department of Veterans Affairs